This is an appeal from a judgment in the Circuit Court of Madison County for plaintiff John Deere Industrial Equipment Company as to fewer than all parties and as subsequently made final pursuant to Rule 54 (b) of the Alabama Rules of Civil Procedure. We affirm.
On December 6, 1976, Commerce Union Bank entered into a security agreement with Alabama Forest Resources, Inc., covering all of Alabama Forest Resources' existing and after acquired equipment and machinery. A financing statement was filed with the Secretary of State on December 15.
Alabama Forest Resources, Inc., subsequently began doing business under the name of American Forest Resources, Inc., and under the latter name obtained possession of a JD550 crawler with limb risers and a JD 3325 power winch on August 10, 1978, from John Deere Industrial Equipment Company, pursuant to a rental agreement. The agreement contained an option to purchase and provided for ninety-one percent (91%) of the rentals paid to be applied to the purchase price. American Forest Resources exercised its option to purchase on September 11, and John Deere filed a financing statement with the Secretary of State on September 21.
On August 25, American Forest Resources purchased a 401-C loader backhoe with a 9250 hoe from John Deere. John Deere filed a financing statement on this equipment with the Secretary of State on September 5. September 4 was a legal holiday.
On May 9, 1979, John Deere filed a three-count detinue suit for personal property against Commerce Union and American Forest Resources. Commerce Union answered and counterclaimed for detinue and conversion. After a hearing, the trial court entered judgment on June 20, against the bank for the equipment and dismissed the bank's counterclaim. On July 12, Commerce Union filed a motion for new trial, or in the alternative, for amendment of judgment. An order of final judgment was entered on August 3, pursuant to rule 54 (b), ARCP. Commerce Union appeals.
The first issue to be determined is whether John Deere's perfected purchase money security interest in the 401-C loader equipment should take priority over the bank's prior perfected security interest in the same collateral, when John Deere's *Page 789 
security interest was obtained on August 25, 1978, and the financing statement was filed on September 5.
The Uniform Commercial Code, provides for the determination of priorities among competing and conflicting security interests. Section 7-9-312 (4), Code 1975, provides as follows:
 A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 10 days thereafter.
Although this provision has been amended as of June 26, 1979, to allow twenty days for perfection, the transactions in question occurred prior to the amendment; therefore, the original provision governs.
Section 1-1-4, Code 1975, provides for the computation of time as follows:
 Time within which any act is provided by law to be done must be computed by excluding the first day and including the last. However, if the last day is Sunday, or a legal holiday as defined in section 1-3-8, or a day on which the office in which the act must be done shall close as permitted by any law of this state, the last day also must be excluded, and the next succeeding secular or working day shall be counted as the last day within which the act may be done.
This statute has been interpreted to apply "to acts required to be done within a certain time, and not to time which must intervene before a certain status is terminated or one is brought into existence." Jones v. Duncan, 250 Ala. 587,35 So.2d 345 (1948).
According to the statutorily prescribed method of computation, September 5 (date of filing) was, in fact, the eleventh day following August 25 (date of purchase), and, ordinarily, would have been beyond the period for perfecting under the special priority provisions. September 4 (the tenth day), however, fell on Labor Day, a legal holiday under §1-3-8, Code 1975, which would have been excluded under the statute, thereby making September 5 the last day on which to perfect.
Commerce Union contends that § 1-1-4 is not applicable to the ten-day period in question because it is merely an intervening period, at the end of which a subsequent purchase money security interest in non-inventory collateral, will lose its preferred status over a prior perfected security interest in the same collateral, unless the purchase money security interest is perfected (by filing, here) within the ten-day period. We disagree. John Deere's filing of a financing statement on September 5 was an "[act] required to be done within a certain time. . . ." Jones v. Duncan, 250 Ala. 587,589, 35 So.2d 345, 347 (1948). John Deere was required to file within a ten-day period to perfect its security interest and maintain its priority; therefore, § 1-1-4 is applicable. According to § 1-1-4, John Deere perfected within the ten-day period and is entitled to the special priority afforded a purchase money security interest in § 7-9-312 (4).
The second issue which must be decided is whether John Deere's purchase money security interest in the JD550 crawler and the JD 3325 power winch should prevail over the bank's prior perfected security interest in the same collateral. Although American Forest Resources first obtained possession of the aforementioned equipment from John Deere on August 10, 1978, under a rental agreement, one month later on September 11, 1978, a purchase agreement for the same equipment was entered between the parties. It was not until September 21, ten days after the purchase agreement was executed, that John Deere filed a financing statement to perfect its security interest. Before this issue can be resolved, there must be an initial determination of whether the lease of August 10 was, in fact, a true lease or whether it was instead a security interest.
Section 7-1-201 (37), Code 1975, defines a security interest as follows:
 "Security interest" means an interest in personal property or fixtures which secures payment or performance of an *Page 790 
obligation. . . . Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest". . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.
Section 7-9-102, Code 1975, the scope provision for Article 9, states:
 (1) . . . [T]his article applies so far as concerns any personal property and fixtures within the jurisdiction of this state:
 (a) To any transaction (regardless of its form) which is intended to create a security interest. . . .
. . . . .
 (2) This article applies to security interests created by contract including . . . title retention contract and lease . . . intended as security.
The official comment to this section further provides:
 [T]he principal test whether a transaction comes under this Article is: is the transaction intended to have effect as security? . . . When it is found that a security interest as defined in Section 7-1-201
(37) was intended, this Article applies regardless of the form of the transaction or the name by which the parties may have christened it.
Although intent is the principal test under the Code, other factors for consideration have been used by the courts. In reAlpha Creamery Co., Inc., 4 U.C.C.Rep.Serv. 794, 797-98 (W.D.Mich. 1967), listed the following indicia for distinguishing a true lease from a security interest.
 1. The facts in each case control to show intention of the parties to create a security interest.
 2. Reservation of title in a lease or option to purchase appurtenant to or included in the lease does not in and of itself make the lease a security agreement.
 3. Lease agreement which permits the lessee to become the owner at the end of the term of the lease for a nominal or for no additional consideration is deemed intended as a security agreement as a matter of law.
 4. The percentage that option purchase price bears to the list price, especially if it is less than 25%, is to be considered as showing the intent of the parties to make a lease as security.
 5. Where the terms of the lease and option to purchase are such that the only sensible course for the lessee at the end of the lease term is to exercise the option and become the owner of the goods, the lease was intended to create a security interest.
 6. The character of a transaction as a true lease is indicated by:
 (a) Provision specifying purchase option price which is approximately the market value at the time of the exercise of the option.
 (b) Rental charges indicating an intention to compensate lessor for loss of value over the term of the lease due to aging, wear and obsolescence.
 (c) Rentals which are not excessive and option purchase price which is not too low.
 (d) Facts showing that the lessee is acquiring no equity in leased article during the term of lease.
The Court in RCA Corporation v. State Tax Commission ofMissouri, 513 S.W.2d 313 (Mo. 1974), stated that "[w]e must gather the intention of the parties from the entire instrument without regard to its form, or technical terms used therein . . . in the light of the nature of the transactions, the situation and relationship of the parties, and the purposes sought to be achieved by them." The ultimate determination, therefore, must be a factual one. E.g., Matter of Tillery, 571 F.2d 1361 (5th Cir. 1978). *Page 791 
Upon a cursory examination of the rental agreement in question, many of its conditions and terms seem to indicate a security interest. The standard printed lease form provides that lessee shall be liable for the full rent of the guaranteed minimum rental period, that lessee may purchase at his option at any time during the term and apply ninety-one percent (91%) of all rentals paid to the purchase price which is the present value as indicated on the lease, that lessee shall indemnify lessor for loss or damage (except to the extent covered by insurance purchased by the lessor), that the amount of total loss shall be calculated according to the present value, less any rental payments made, and that damage other than total loss shall not terminate the rental payments for the remainder of the term. The lease, however, does not designate any guaranteed minimum rental term. Although the instrument provides a space for the designation of a guaranteed term and the lease provisions and conditions refer to a guaranteed term, there is no evidence of any guaranteed minimum rental period under this lease.
Most of the cases declaring rental agreements to be security interests have involved leases which obligated lessees for a guaranteed minimum term: Matter of Tillery, 571 F.2d 1361 (5th Cir. 1978); James Talcott, Inc. v. Associates Capital Co.,Inc., 491 F.2d 879 (6th Cir. 1974). American Forest Resources was not obligated to pay any particular sum of money for any specified term other than monthly rental payments of $2,575.00. According to competent testimony at trial, the rental value of this equipment would be between $2,200.00 and $2,500.00 per month. Under this arrangement, therefore, American Forest Resources could terminate the lease and return the equipment at any time without further liability.
Although ninety-one percent (91%) of the rentals paid could be applied to the purchase price in the event American Forest Resources exercised its option to purchase, there is no conclusive evidence that this provision would allow the lessee to "become or [have] the option to become the owner of the property for no additional consideration or for a nominal consideration." Code 1975, § 7-1-201 (37). Likewise, there is no evidence to support a contention that the only sensible course for American Forest Resources under the terms of the lease would be to exercise the purchase option. In fact, American Forest Resources exercised its option pursuant to the ninety-one percent (91%) accrual allowance only one month after the lease was executed, which left almost the entire purchase price to be paid. There is also evidence that the actual purchase price was more than the option price in the lease. The present value (option price) of the equipment was $35,808.00 in the lease as compared to the actual purchase price of $41,700.00 in the purchase agreement. The seeming renegotiation of the purchase price further indicates the intent of the parties to enter into two separate transactions — first a lease, then a purchase agreement.
Although American Forest Resources obtained actual possession of the equipment on August 10, pursuant to the rental agreement, it did not become a "debtor," nor did it "[receive] possession of the collateral" for purposes of § 7-9-312 (4) until September 11, the date of the purchase agreement. BrodieHotel Supply, Inc. v. United States, 431 F.2d 1316 (9th Cir. 1970). Brodie states that "the term `debtor' as it is used in this particular priority statute . . . [§ 7-9-312 (4)] means `the person who owes payment or other performance of the obligation secured.'" [§ 7-9-105 (d)], Id. at 1319. American Forest Resources was only required to pay rent on a monthly basis for the use of the equipment; therefore, it "did not owe performance of an `obligation secured' by the collateral in question" until the purchase agreement was executed on September 11, 1978. Id.
After a careful review of the lease, and for the above stated reasons, we find that the intent of the parties was to create a true lease. John Deere's purchase money security interest was created by the execution of the purchase agreement on September 11, and the financing statement filed *Page 792 
September 21 perfected and secured John Deere's preferred status over Commerce Union's prior perfected security interest.
Other issues raised by the parties need not be addressed for purposes of this appeal. We find the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and BEATTY, JJ., concur.