**In re Wendell VAUGHN and Billie Vaughn, Debtors.**

**Bankruptcy No. 1–82–01244.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Jan. 13, 1983.

---

Paul E. Lukey, Cincinnati, Ohio, for debtors.

Richard E. Wentz, Covington, Ky., for creditor H. Meyer Dairy Co.

## DECISION AND ORDER

BURTON PERLMAN, Bankruptcy Judge.

Debtors filed this Chapter 13 case the petition in which showed only one creditor to be paid through the plan. That creditor is H. Meyer Dairy Company, listed as an unsecured creditor in the amount of $39,-398.03.

Creditor filed an objection to confirmation of the plan, asserting (1) that the plan was not submitted in good faith; (2) the plan does not comply with the Chapter 13 and other applicable provisions of the Bankruptcy Code; and (3) the plan is not in the best interest to creditors. When the case came on for confirmation, the confirmation hearing was continued so that creditor might conduct a 205(a) examination.

Other matters relevant to this case proceeded on a separate track in this court. That is, the individual debtors here had been engaged in a corporate business named Midwestern Food Stores, Inc. (Midwestern). Creditor Meyer Dairy was also a major creditor in that case. This Chapter 13 case was filed individually because debtors had personally guaranteed debts owing by Midwestern to Meyer Dairy. When this case originally was filed, the assets of Midwestern had not yet been liquidated, but now have been, and the indebtedness of Midwestern to Meyer Dairy was substantially reduced. This impacts on the present case because that reduction also reduces the amount owed by these debtors to Meyer Dairy on their guarantee.

As originally filed, the petition in this case did not list all of the assets of debtors, but now has been amended to reflect those omitted assets. One such asset is the value of the interest of debtors as owners of all of the stock of a corporation named Happy Time. Creditor asserts that debtors have a substantial equity by reason of such stock ownership, while debtors contend that there is no equity interest.

Under date July 2, 1982, creditor filed a proof of claim in the amount of $43,825.54, the proof of claim being accompanied by an itemization as follows: principal due on note $39,898.03; interest due till May 1, 1982, $2,277.51; and rent due as of May 1, 1982, $1,650.00. On November 22, 1982 creditor filed an amended proof of claim showing a net due as of October 19, 1982 in the amount of $29,693.81. In its itemization in support of this figure, creditor showed principal due on note, $39,898.03; interest due till May 1, 1982, $2,277.51; rental, maintenance expenses, etc. guaranteed by debtors (followed by an itemization of figures relatively small in amount some of which are contested by debtors), $5,234.77, for a total due of $47,410.31. Creditor deducts $17,716.50 as a credit for the amount

paid by Midwestern leaving the mentioned net due of $29,693.81.

After its 205(a) examination, creditor filed a memorandum informing the court of the results of that examination, and asserting facts and law in support of its objection to confirmation. Thus, creditor alleges that there was testimony at the 205(a) examination by debtor Wendell Vaughn that his opinion was that the value of J.J. Smith Inc. (wholly owned by Happy Time, which in turn is wholly owned by debtors) is at least $500,000.00. Further, it is alleged that the accountant testified that the net worth of J.J. Smith Inc. in May was $398,751.13. Creditor also advised us that debtors owned three tracts of land on Central Avenue which were not listed on the bankruptcy schedule. Another item is a life insurance policy owned by debtors, but creditor could not inform us as to whether there was any cash value to the policy because debtors were unable to provide this information at the examination. Several other relatively minor discrepancies were brought out by creditor. Creditor then asked that confirmation be denied for lack of good faith in failing to disclose the stated assets. Debtor on October 14, 1982 filed Application to Amend Schedules. Such application has not been acted on by the Court, but we note that it purports to add the three real estate parcels on Central Avenue. It deals with the Happy Time stock. The assertions in the Application regarding the stock are equivocal, but can be read to be saying that debtors have no equity by reason of that stock ownership.

The major point argued by creditor in its memorandum in support of its objection to confirmation goes to the best interest of creditors test contained in 11 U.S.C. § 1325(a)(4). That test requires that the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date. The original plan provided for payments at the rate of $740.00 per month for five years. Creditor reduced the deferred payments to present value using 13.75%, the interest rate being paid on U.S. Treasury notes at the time the memorandum was filed. Creditor arrived at a figure of $32,000.00. Since this was less than the amount that it was then claiming, it contended that the best interest test was not being met.

The situation has changed since then. The change is not in the value of assets which would be available on a liquidation, for the dispute between the parties remains as to those. The amount of creditor's claim, however, has been substantially reduced by reason of payments by Midwestern to creditor. The parties are in dispute as to the amount by which the indebtedness guaranteed by debtors to Meyer Dairy has been reduced, and what the proper amount of the claim of Meyer Dairy against these debtors presently is.

Neither party has offered any competent evidentiary material in support of its position,' but both have mentioned in their memoranda the amounts which they assert are owing. Under these circumstances, we carefully reviewed the respective memoranda of the parties to see whether there was agreement as to some or all of the amounts owed by debtors to creditor Meyer Dairy. There is not.

There is agreement that there were three sorts of indebtedness owing by Midwestern to creditor: (1) a note, (2) an open account (which debtors call indebtedness on after acquired inventory), and (3) rent. It is further not disputed that the first and third items, note and rent, were secured by personal guarantees of debtors. The open account was not.

While the state of the record does not permit us finally to conclude this matter because the dollar amounts as to debtors' indebtedness to Meyer Dairy is in dispute, we can here deal with one bone of contention. That has to do with how Meyer Dairy applies the payments received from Midwestern against the three accounts mentioned above.

Creditor, Meyer Dairy, has first applied the Midwestern assets paid to it against the nonguaranteed debt, the open account, and only then applied the balance against the guaranteed debt, that due on the note. Debtor takes exception to this approach and contends that creditor must first offset the entire amount of the Midwestern assets against the balance due on the note which, of course, would make a world of difference in the indebtedness which the Vaughns would have to pay through their Chapter 13 plan.

■ The parties appear to be in agreement that the question of how the proceeds of the sale of collateral of Midwestern paid over to creditor should be allocated is a matter to be determined by Kentucky law. This is consistent with the proposition that state law should be used to decide issues regarding property and contract cases which would be governed by state law absent a bankruptcy context, as set forth in *In Re Madeline Marie Nursing Homes*, 694 F.2d 433, 439 (6th Cir.1982). Kentucky has adopted the Uniform Commercial Code, but it is apparent from the discussion by counsel that the provisions of the UCC do not answer the present inquiry. Creditor says that while this is so, case law interpreting the UCC in other states "has consistently held that the secured party can apply the proceeds in the manner it sees fit, absent an express agreement [to the contrary]," citing *J.J. Fowler, Inc. v. Fulton National Bank*, 145 Ga.App. 220, 243 S.E.2d 642 (1978), and *In re Dosker*, 284 Mich. 597, 280 N.W. 61 (1938). Creditor's position in this regard is not well taken.

■ In an annotation at 57 A.L.R.2d 855, "Application Of Payments As Between Debts For Which A Surety Or Guarantor Is Bound and Those For Which He Is Not", at p. 881 may be found the following:

> "It is frequently stated that neither the debtor, the creditor, nor a surety may direct the application of the proceeds of collateral which have been involuntarily obtained, and that the court will make the application in such a manner, in view of all of the circumstances of the particular case, as will best protect the interest of all the parties. Consequently, the establishment of any definite rule pertaining to all cases involving the application of such proceeds is impossible; however, in the absence of countervailing equities, *the majority of the cases hold that the proceeds of collateral which have been obtained through judicial proceedings or other involuntary means will be applied pro rata among the debts for which the collateral was security so that a debt on which a surety or guarantor is bound will receive its part of the payment.*"

It is interesting to note that in support of this proposition, the annotation cites a Kentucky case, *Hargis Bank and Trust Company v. Gambill*, 234 Ky. 538, 28 S.W.2d 769 (1930). There is no indication that *Hargis Bank* is not still the law in Kentucky. We think that the circumstances surrounding the present case make it fair and equitable that the above stated rule be here applied.

Unfortunately, the foregoing conclusion does not permit us to conclude this matter. There still remain questions of fact which must be determined in an evidentiary hearing. Thus, such a hearing is required in order to determine the correct amount owing to creditor on its note; the amount owing to creditor on open account; and the amount owing to creditor as rent. Moreover, an evidentiary hearing is required to resolve the question of the value of the interest of the Vaughns in the Happy Time enterprise. The parties are in disagreement as to these matters so far as we can determine from the memoranda which are before us.

Accordingly, creditor's Objection to Confirmation, and debtors' Objection to Claim will be set down for evidentiary hearing.

SO ORDERED.