**In the Matter of PATCH GRAPHICS, Debtor.**

**Bankruptcy No. MM11–82–01233.**

United States Bankruptcy Court, W.D. Wisconsin.

Aug. 23, 1983.

Jerry McAdow, Madison, Wis., for debtor.

William Rameker, Madison, Wis., for debtor.

Charles Center, Madison, Wis., for creditor John L. Atwood.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

Debtor, Patch Graphics, is the vendee on a Wisconsin land contract. The subject real estate was appraised in January 1981 at a fair market value of about $635,000.00 and is appreciating at about 4% per year. The balance due the vendor as of August 1, 1983 is $316,034.20, representing $308,759.60 in principal and $7,274.60 in matured interest. Monthly payments on the land contract, in the amount of $3,251.40, were made from the date of filing, July 15, 1982, through March 15, 1983. At least three payments due after March 1983 have not been made. These total $9,754.20. In addition, Patch Graphics has assigned its interest in the land contract to Commercial and Savings Bank of Monroe, Wisconsin, to secure a note of Patch Press, Inc., a related business, for $550,000.00. The property in question is used in the principal business of the debtor,

which is to lease property to Patch Press, Inc. The land contract vendor, John L. Atwood, has filed an application for allowance of the delinquent post-petition payments as a priority administrative expense under § 507(b) of the Bankruptcy Code.

Section 503(b) provides for allowance of administrative expenses including "(1)(A) the actual, necessary costs and expenses of preserving the estate. . . ."

Section 507(a)(1) of the Bankruptcy Code provides that "administrative expenses allowed under section 503(b) of this title" have first priority among unsecured claims against the debtor's estate.

Section 507(b) provides for a super priority for those administrative expenses, granted priority under § 507(a)(1), which arise from the application of §§ 362, 363 or 364 (i.e., from the stay, "from the use, sale, or lease of such property under section 363 of this title" or from obtaining operating credit).

Under § 363, the trustee is empowered, *inter alia,* to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing" and may similarly "use property of the estate in the ordinary course of business without notice or a hearing." Section 363(c)(1).

Numerous court decisions recognize the right of a lessor of business property to rental payments from a trustee or debtor in possession using such property in carrying on the business of the debtor. *See, e.g. In Re Kors, Inc.,* 13 B.R. 683, 684 (Bkrtcy.D.Vt. 1981); *In Re Lackow Bros., Inc.,* 18 B.R. 770, 772 (Bkrtcy.S.D.Fla.1982); *In Re Lanman,* 24 B.R. 741, 742 (Bkrtcy.N.D.Ill.1982). If the present agreement were a lease, then payments for the use of the property would ordinarily merit the priority status sought here.

The debtor contends that a Wisconsin land contract is not analogous to a lease but rather is similar to a mortgage under which the vendor is a mere lienor. If the land contract is a security agreement rather than an executory contract, the vendor is entitled to adequate protection of his security interest, but not entitled to periodic payments for the use of the property in question.

State law ordinarily provides the guide for decision of property and contract issues in bankruptcy. *In Re Vaughn,* 26 B.R. 486, 489 (Bkrtcy.S.D.Ohio 1983); *In Re Design Craft, Inc.,* 26 B.R. 469, 475 (Bkrtcy. W.D.Mo.1983). The law of Wisconsin is quite clear as to the status of land contracts: they are security devices under which the vendee is the owner unless and until the vendee's interest is foreclosed. They are thus analogous to purchase money mortgages for nearly all purposes. The Wisconsin Supreme Court has most recently summarized the matter succinctly: under a land contract "[t]he vendee becomes the equitable owner, while the vendor retains legal title to secure the balance of the purchase price." *In Re Foreclosure of Tax Liens,* 106 Wis.2d 244, 250, 316 N.W.2d 362 (1982); *Kallenbach v. Lake Publications, Inc.,* 30 Wis.2d 647, 651, 142 N.W.2d 212 (1966).

Several bankruptcy courts have analyzed the nature of a land contract under the various terms by which the laws of the states in which they sit characterize such transactions. *In Re Booth,* 19 B.R. 53 (Bkrtcy.D.Utah 1982); *In Re Cox,* 28 B.R. 588, 589–90 (Bkrtcy.D.Idaho 1983) (land contract devices are analogous to purchase money mortgages); *In Re Gladding Corp.,* 22 B.R. 632, 634–5 (Bkrtcy.D.Mass.1982). The most instructive of these cases is *In Re Booth,* in which the court had to decide whether a Utah "contract for a deed" (which is similar in character to a Wisconsin land contract) was an executory contract subject to assumption or rejection, or a lien. The court took the view that the principal guide to decision in such cases was essentially instrumental, that is, the extent to which conceiving the transaction as a lien or a contract would aid the bankruptcy policy of equality among creditors: "[t]he contract for deed, where debtor is vendee, benefits the estate more when viewed as a lien than as an executory contract." *Id.* at

58 (footnote omitted). Seen as a contract, the transaction could result in forfeiture (disfavored by equity), but treating the contract as a lien results in the enlargement of the debtor's estate, makes adequate protection available to creditors and favors rehabilitation. Furthermore, for the debtor to assume the contract (if it is to be treated as an executory contract under § 365) "defaults must be cured, damages must be paid, and adequate assurance of performance must be given, all as costs of administration." *Id.* at 60. But if the transaction is treated as creating a lien, then assumption is irrelevant, and no administrative costs are incurred. *Id.* In sum, "[v]endors [on land contract] are not preferred, for example, in terms of administrative claims, but are treated on a par with other mortgagees ... who are protected against any decrease in the value of their liens." *Id.* at 61.

■ In the present case Atwood is in effect demanding payment at the land contract rate for the continued use of the real estate as if the land contract were a lease. Such payments are not specifically provided for in any section of the Bankruptcy Code. Recognized as the holder of a lien under Wisconsin law, Atwood is entitled to adequate protection under § 361. Such adequate protection is already vouchsafed in the present instance by the substantial excess of the value of the property over the value of the vendor's lien. During the pendency of the case, or for so long as adequate protection is provided, the vendor's right to payment may be suspended and no administrative costs are incurred.

Only one case, *In Re Airlift International, Inc.,* 26 B.R. 61 (Bkrtcy.S.D.Fla.1982), clearly distinguishable from the present one, has provided for payments for the use of collateral to a mortgagee, apart from "adequate protection." *In Re Airlift International* is distinguishable not only for the special provision of law upon which it rests (11 U.S.C. § 1110(a)(1)) but also for the holding that the seller was entitled to payment *not* at the rate of contract installments, but at a reasonable value to be fixed by the court.

The case is, however, clearly based on the proposition that a rental or use payment is not available as an administrative claim against a debtor in possession unless the vendor otherwise would have a right to the possession of the subject property. Thus, it is consistent with our holding that Atwood is not entitled to installment payments under the present land contract as an administrative expense.

Finally, the language of § 507(b) does not support a special priority status for the delinquent payments. Such super priority is granted to claims when "adequate protection" has been granted under § 361, and "notwithstanding" such protection, its provision proves inadequate because of actions taken under §§ 362, 363 or 364. *See* 124 Cong.Rec.H. 11095 (Sept. 28, 1978) (cited in Bkr. L.Ed., Legislative History, § 81.3). In this case, the creditor has not contended, nor could he successfully contend, that he lacks adequate protection—because of the excess of the value of the property over vendor's lien. Nor has the creditor contended that the use of the property by Patch Graphics and by Patch Press, its lessee, has in any way rendered his protection less adequate. Secondly, the claim to be granted super priority, if it is to be granted at all, must relate to the subject matter of § 503(b) as written in to § 507(a)(1)—i.e. "the actual, necessary costs and expenses of preserving the estate" and certain taxes, fines, compensation and expenses of various entities or individuals, essentially contributing to the estate as a whole. No showing has been made that the payments sought to be a special priority serve to preserve the estate, or are "actual [and] necessary" within the meaning of the applicable statutes.

Upon the foregoing which constitutes my findings of fact and conclusions of law in this matter the application of John L. Atwood for allowance of a claim for administrative expenses is hereby denied.