**In the Matter of DeLOREAN MOTOR COMPANY, a Michigan corporation, Debtor.**

**Bankruptcy No. 82–06031–G.**

United States Bankruptcy Court, E.D. Michigan, S.D.

April 13, 1984.

Robert Weiss, Sheldon S. Toll, Detroit, Mich., for trustee.

Bruce Sendek, C. William Garratt, Bloomfield Hills, Mich., for debtor.

MEMORANDUM AND ORDER DENYING SECURED CLAIM

RAY REYNOLDS GRAVES, Bankruptcy Judge.

STATEMENT OF THE CASE

The within cause comes before the Court for a determination of the validity of John Z. DeLorean's alleged secured claim against the DeLorean Motor Company. On January 25, 1983, John Z. DeLorean (hereinafter referred to as JZD) DeLorean Motor Company (hereinafter referred to as DMC) filed a stipulated order to determine the validity, priority and extent of the alleged secured claim. According to the stipulation, the following is admitted:

1. In February, 1982, JZD agreed to loan funds to DMC and/or to advance funds on DMC's behalf in an effort to give DMC an opportunity to effectuate a restructuring of the debt of DMC Limited, its subsidiary, located in Northern Ireland.

2. DMC and JZD entered into a loan agreement and security agreement dated February 19, 1982. These agreements were purportedly authorized by DMC's board of directors on April 16, 1982.

3. JZD's security interest was perfected by financing statements duly filed in California, Georgia, Michigan, New Jersey, and New York.

4. The law firm of Jaffe, Snider, Raitt & Heuer, attorneys for the debtor-in-possession holds in escrow the sum of $1,500,000, which represents proceeds received from the disposition and sale of certain property subject to JZD's security interest.

5. No other party has a prior claim or security interest on the property subject to JZD's security interest.

6. JZD's total net disbursement on behalf of DMC is in the amount of $940,845.91. Pursuant to the stipulation, JZD agreed to reduce the claim by $262,400, thereby waiving 2 years rental payments on the Bridgewater, N.J. facility leased by JZD to DMC

for the period from March, 1983 thru July 7, 1984. These payments were made by DMC to JZD two years in advance of the due date.

On or about March 11, 1983, the unsecured creditors committee filed written objections to JZD's alleged secured claim, contending that JZD had acted fraudulently and had mismanaged the affairs of DMC.

In the superceded Chapter XI proceedings, the Court appointed Price, Waterhouse & Company, Certified Public Accountants, as the examiner, under 11 U.S.C. § 1104(b). The examiner's work was performed by Yale Levin, a Certified Public Accountant with extensive experience in auditing and bankruptcy reorganization work. In March, 1983, the examiner was requested by counsel for the debtor, Lawrence K. Snider, counsel for the unsecured creditors' committee, Sheldon S. Toll, and counsel for JZD, Kenneth McConnell, to audit JZD's secured claim. The examiner attempted to perform this task, but was unable to proceed because JZD and his agents failed to comply with the examiner's repeated requests for information and documents.

At all applicable times, JZD was Chairman of the Board of the Debtor, Chief Executive Officer of the Debtor and a beneficial owner of more than 80% of the Debtor's issued and outstanding voting securities. Between February and October, 1982, JZD deposited more than $15,000,000 of the Debtor's funds in JZD's personal bank accounts, resulting in a commingling of DMC's funds with JZD's funds. During this period, DMC dropped the requirement of two signatures for all disbursements, relying only on JZD's signature on his personal account from which corporate and personal disbursements were made. Between February and October, 1982, the Debtor failed to maintain adequate books and records from which the Debtor's financial condition or business records might be ascertained. The books and records which do exist are in disarray.

Under the Security Agreement Addendum dated March 8, 1982, which was submitted by JZD as part of claim No. 360, JZD agreed to use personal funds to meet DMC's obligations. Between February and October, 1982, JZD made approximately $900,000 of the disbursements listed on the schedules to G.P. No. 66 to himself or to other entities beneficially owned and controlled by JZD. During the same period of time, there were nearly $1,000,000 in payments to Vinci Leasing. In the opinion of the examiner, there is probable cause to believe that the transactions with Vinci Leasing were improper.

It appears from the schedules to G.P. No. 66 that the Debtor made payments of nearly $5,000,000 to a general partnership sometimes known as CG, of which Consolidated International Incorporated and Group Investors Corporation were members between February and October, 1982. Between February and October, 1982, JZD was secretly a general partner of CG.

## DISCUSSION

 This cause requires that this Court decide whether JZD has a valid secured claim as indicated on JZD's proof of claim. A properly filed proof of claim is *prima facie* evidence of the validity of a claim. *Whitney v. Dresser*, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906). The burden is on the objecting party to go forward with evidence establishing the basis of the objections. If the objecting party succeeds in overcoming the *prima facie* case, the claimant, JZD, has the burden of persuasion to prove the validity of the claim by a preponderance of the evidence. *In re Central Rubber Products, Inc.*, 31 B.R. 865 (Bkrtcy.D.Conn.1983); *United States v. Coleman American Inc.*, 26 B.R. 825, 10 B.C.D. 185 (Bkrtcy.D.Kan.1983).

 In the matter at bar there has been no allegation made that the creditor, JZD did not properly file his proof of claim. Thus, the filing of JZD's proof of claim is *prima facie* evidence of the validity of the secured claim. The trustee agrees that the filing of the proof of claim creates a pre-

sumption that the claim is valid. However, the trustee argues that the presumption has been rebutted by evidence presented at trial.

The trustee argues that the presumption in favor of the validity of the secured claim has been rebutted by the expert testimony of Yale Levin. Mr. Levin was appointed as an examiner in these proceedings and performed functions consistent with that office until his services were terminated by the filing of the DMC's petition converting this case to a proceeding under Chapter 7 of the Bankruptcy Code. Mr. Levin's investigation revealed that JZD has commingled his personal account with DMC's account. JZD contends that he used his personal checking account to pay corporate debts and argues that there was no commingling of the personal and corporate assets. During the course of the hearings, witnesses testified that JZD paid both personal and corporate obligations out of the same checking account that JZD contends was established to handle corporate affairs *only*. The trustee argues that the presumption in favor of the validity of the secured claim has been rebutted because:

(1) JZD failed to segregate his personal account from DMC's corporate account; and

(2) the court appointed expert testified that JZD engaged in improper transfers of corporate funds to entities having no relationship to DMC.

(3) JZD's commingling of the Debtor's funds with his personal funds, constitutes a badge of fraud. *In re Wilson*, 33 B.R. 689 (Bkrtcy.M.D.Ga. 1983); *In re Kaiser*, 32 B.R. 701 (D.C.N.Y.1983) *aff'd* 722 F.2d 1574 (2d Cir.1983).

(4) JZD controlled the Debtor and failed to maintain adequate books and records. This constitutes a badge of fraud. *In re McBee*, 512 F.2d 504 (5th Cir.1975).

(5) JZD made payments to himself or to his controlled entities of approximately $900,000, constituting a badge of fraud. *In re D.H. Overmyer Tele-casting Co.*, 23 B.R. 823 (Bkrtcy.N.D. Ohio 1982).

This Court finds that the evidence introduced by the trustee rebuts the presumed validity of the secured claim. Once the trustee, as objector, introduces evidence rebutting the validity of the claim, the burden shifts to the claimant, JZD, to introduce evidence, establishing the validity of the claim. JZD has the burden of persuading the Court that he has a valid secured claim. The testimony fails to meet that burden. *In re Gourment Gallery, Inc.*, 27 B.R. 912 (Bkrtcy.E.D.Pa.1983).

JZD argues that the trustee has failed to overcome his *prima facie* case because the trustee did not timely file an objection to the claimant's proof of claim. Without discussing the merits of this contention, this Court finds that the unrefuted evidence of commingling of personal and corporate accounts is fatal to JZD's claim against DMC. To simply state that the trustee failed to specifically allege the grounds upon which the claim is invalid, does not satisfy JZD's burden of proving the validity of his alleged secured claim once evidence has been introduced rebutting the validity of the claim.

JZD is an insider of the Debtor by virtue of his greater than 80% equity ownership of the voting stock of the Debtor and the fact that he was also the Chief Executive Office of the Debtor. As an insider, JZD's dealings with the Debtor must be subjected to rigorous scrutiny. *Pepper v. Litton*, 308 U.S. 295 at 308, 60 S.Ct. 238 at 246, 84 L.Ed. 281 at 290 (1939). Since JZD's dealings have been challenged by a substantial showing of invalidity, the burden is on JZD not only to prove the good faith of the transactions, but also to show their inherent fairness. *Id.* at 306, 60 S.Ct. at 245. JZD has failed to produce sufficient evidence to establish the validity of the claim, and has failed to demonstrate that the claim is valid by a preponderance of the evidence.

JZD holds a fiduciary position with DMC, as Chief Executive Officer, Chairman of the Board and majority shareholder. As a

fiduciary, JZD owed DMC and its creditors the highest duty of loyalty and good faith cognizable under law. A creditor who is also a fiduciary must be prepared to undergo closer scrutiny than other creditors.

In the case at bar, there is a clear showing that JZD commingled corporate funds with his personal funds. There is no credible evidence that this commingling was disclosed to or authorized by the DMC board. Disbursements were made from JZD's personal checking account on behalf of DMC, and DMC accounts receivable were deposited into the same checking account. Ordinarily, an agent who receives money on account of the principal cannot properly deposit it to his own credit in a bank, where it may be subject to set-off or lien by the bank, or so mingle it with his own funds that there may be difficulty in tracing the principal's money. Restatement (Second) of Agency § 398 comment b (1983). An agent receiving or holding things on behalf of the principal is subject to a duty to the principal not to receive or deal with them so that they will appear to be his own. He must not commingle funds in a manner that tends to destroy their separate identities. Restatement (Second) of Agency § 398. Neither the testimony nor the arguments of counsel presented any credible basis for finding that the commingling of funds in JZD's personal checking account was an acceptable business practice.

Mary Thoman and Judith Lynch, two certified public accountants, having a close business relationship with JZD and DMC, testified that the company experienced serious financial difficulties in February of 1982 due to a softening in the market for the DeLorean Motor vehicle. Ms. Lynch testified, through deposition, that she segregated the books and accounts of DMC and JZD in order to keep track of business and personal expenditures. She decided what was a corporate or personal expenditure out of JZD's personal account. Her testimony verified that prior to February of 1982 all disbursements were made by DMC out of a corporate checking account requiring two signatures of officers of DMC. After February of 1982 all disbursements,

corporate or personal, were made through the personal checking accounts of JZD, where he was the sole signatory. This practice continued, under Ms. Lynch's supervision until she left for maternity leave on or about August 1, 1982. On her return on or about October 24 or 25, 1982, she checked records of the company to identify vendors and to determine the reasonableness of payments to vendors, but did not check behind the transactions to verify the expenditures. She "skimmed through." Ms. Lynch did not find the practice of using a single account for business and personal transactions an unusual business practice. In her view, this practice has been seen "in a number of small corporations." The Court finds this practice of commingling, even if arguably acceptable in small corporations, wholly unacceptable in a multimillion dollar corporation with creditors throughout the United States, Europe, and the United Kingdom.

Ms. Thoman's testimony is contradictory and unclear on the standard used to prepare JZD's June 30, 1982, personal financial statement. The February, 1982 agreement between JZD and DMC was not reflected as a secured debt owing to JZD on his June 30, 1982, financial statement. The Court is asked to accept an unclear standard of review in the preparations of JZD's financial statement and ignore the failure of that financial statement to disclose that JZD as of June 30, 1982, held a secured claim against DMC effective February, 1982. If JZD held a secured claim against DMC, it appears from this non-disclosure, that he abandoned it. JZD *arguendo*, has no duty to disclose the secured claim on the financial statement; however, "sifting the circumstances," the Court finds that the non-disclosure invalidates the claim. *In the Matter of Multiponics*, 622 F.2d 709 (5th Cir.1980). The testimony of the witnesses introduced by the claimant does not persuade the Court that JZD has a secured claim against DMC.

It is clear on this record that JZD's transactions constitute badges of fraud which invalidate JZD's alleged secured claim. It

is equally clear that the failure to maintain separate accounts for business and personal transactions invalidates JZD's claim. For the foregoing reasons, this Court finds that JZD does not have a valid secured claim.

IT IS SO ORDERED.