### In re CENTRAL FOUNDRY COMPANY, Debtor.

**Bankruptcy No. 81–3522.**

United States Bankruptcy Court, N.D. Alabama, W.D.

April 9, 1985.

**896**

Walter Crownover, Tuscaloosa, Ala., Interim Trustee.

Al Vreeland, Tuscaloosa, Ala., for Interim Trustee.

Alyce Spruill, of Phelps, Owens, Jenkins, Gibson & Fowler, Tuscaloosa, Ala., for Hajoca Corp.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Bankruptcy Judge.

This matter came before the Court on the Trustee's contest of the claim of Hajoca Corporation (hereinafter called "Hajoca") for administrative rent in the amount of $172,424.52 pursuant to 11 U.S.C. Section 503(b). This memorandum shall constitute the findings of fact and conclusions of law required under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FINDINGS OF FACT

On October 15, 1974, a Delaware corporation Central Foundry Co. (hereinafter called "Old Central") entered into a series of transactions with the Industrial Development Board (hereinafter called "I.D.B."), Gable Industries, Inc. (hereinafter called "Gable"), and First National Bank of Tuskaloosa (hereinafter called "First National") for the purpose of constructing a pollution control system for its foundry. On that date, Old Central conveyed six small parcels of land to I.D.B. In return, I.D.B. issued tax-free bonds through First National, the trustee of the bond issue, to finance the construction of the pollution control equipment; the $2,250,000 bond issue was secured by the six parcels of land, the pollution control equipment, and an assignment of "rental" payments under the "lease" which is at the heart of this dispute.

Old Central then "leased" the pollution control equipment and the land from I.D.B. The "lease" term was tied to the maturity and retirement of the bond issue. The "rent" was payable to First National April 15th and October 15th of each year when the interest payments on the bond came

due. The "rent" payment due on October 15th of each year also included a payment on the outstanding principal of the bond issue. The "lessee's" obligation to pay "rent" was unconditional; and the "lessee" was further obligated to purchase the pollution control system at the end of the "lease" term for the nominal consideration of $10.00. Gable then executed an absolute guaranty of the obligations of Old Central, its wholly-owned subsidiary, under both the "lease" and the bond issue.

On June 6, 1975, Central Foundry Company, an Alabama corporation (hereinafter called "New Central"), was formed. On June 30, 1975, New Central purchased substantially all of the assets of Old Central excluding the "leasehold" interest at issue here. New Central, however, subleased all of Old Central's interest in the October 15, 1974 lease on June 30, 1975 and assumed the obligation to make "rental" payments. Gable reaffirmed its obligations under the original "lease" and guaranteed the obligations of New Central under the "sublease" agreement. The claimant herein, Hajoca Corporation (hereinafter called "Hajoca"), is the corporate successor of Gable.

New Central filed its Chapter 11 petition on June 15, 1981. The "rental" payment for the period from April 15, 1981 to October 15, 1981 in the amount of $258,648.75 came due on October 15, 1981. Of this amount, $172,424.52 accrued after the filing of New Central's Chapter 11 petition. When New Central was unable to make its payments under the "lease", Hajoca honored its obligations under the guaranty agreements by making the payments.

On December 2, 1981, Hajoca filed an APPLICATION FOR PAYMENT OF RENTALS PURSUANT TO LEASE AS ADMINISTRATIVE EXPENSE UNDER SECTION 503 OF THE BANKRUPTCY CODE. In its application, the claimant stated the following:

> Hajoca is entitled to all the rights, interests, and priorities of the IDB for the payments made to the IDB, and is enti-

tled to be subrogated to the rights and interests of IDB.

The debtor-in-possession filed an OBJECTION TO ALLOWANCE OF CLAIM on December 10, 1981 stating as grounds that the payments made by Hajoca were not "rent" but were, in effect, a payment on the bond issue for which Hajoca was also liable as a guarantor.

New Central's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code on December 23, 1981. On December 24, 1981, First National accelerated the bond issue; and Hajoca paid $1,450,000 on April 29, 1982 to retire the bonds pursuant to its guaranty agreement. Hajoca also paid $50,570.48 on April 29, 1982 apparently for interest from October 15, 1982 to December 24, 1982. On May 6, 1982, Hajoca filed a proof of claim which incorporated by reference its claim for administrative rent and which further stated a claim for the amounts paid on April 29, 1982 "plus $258,648.75 previously paid." In its proof of claim, Hajoca also asserted its subrogation rights by stating:

> Claimant is entitled to all right, title and interest, as assignee or otherwise, pursuant to the Mortgage and Indenture of Trustee, Lease, and other documents relating thereto, and Claimant expressly herein reserves all of its rights thereunder.

On February 14, 1984, the Trustee filed a CONTEST OF CLAIMS which it amended on April 26, 1984. The amendment stated the following grounds of objection to Hajoca's claim for administrative rent:

> The claim of $172,424.52 for administrative rent is contested because: (a) it is duplicative of Hajoca's claim for payment of the bond issue; (b) claimant has not shown that said claim was for actual and necessary costs and expenses of preserving the estate; (c) the rent claimed is disproportionate to the value of the leased property; (d) said claim is not for rent but for the purchase of pollution control equipment financed through the bond issue; and (e) the lease contract was not assumed by the debtor-in-posses-

sion or trustee of the debtor corporation except for payment of the secured claim.

Also on April 26, 1984, the Court, after notice and a hearing, disallowed Hajoca's claim for retiring the bond issue because the Trustee had abandoned New Central's interest in the "leased" property. Thereafter, the Economic Development Administration purchased the pollution control system from Hajoca for $40,000.

## CONCLUSIONS OF LAW AND APPLICATION TO FACTS

Section 502 of the Bankruptcy Code (1978) prescribes the method for determining the allowance of claims. That section provides in pertinent part:

> Section 502 Allowance of claims or interests.
>
> (a) A claim or interest is deemed allowed, unless a party in interest objects.
>
> (b) ... [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that— [such claim falls within ten enumerated exceptions to allowability not pertinent herein].
>
> . . . .
>
> (e)(1) Notwithstanding subsections (a) and (b) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—
>
> . . . .
>
> > (C) such entity requests subrogation under section 509 of this title to the rights of such creditor.

11 U.S.C. Section 502 (1978).

Hajoca has clearly asserted its right to be subrogated to the rights of I.D.B. and First National in both its application for rent and in its proof of claim. In order to determine whether Hajoca is entitled to administrative rent, the Court must, therefore, determine whether the "lessor",

I.D.B., would be entitled to "rent." This issue ultimately hinges upon whether the "lease" is a true lease or a disguised security arrangement. *See In re Peninsula Gunite, Inc.*, 24 B.R. 593, 10 B.C.D. 80 (Bkrtcy.App.Cal. 9th Cir.1982); *In re Patch Graphics*, 32 B.R. 373, 11 B.C.D. 889 (Bkrtcy.W.D.Wis.1983) (land contract vendor not entitled to priority).

■ The Court concludes that the "lease" in question in the instant case is not a true lease but is in fact a disguised security arrangement. The terms of the "lease" clearly show that the land and equipment were being used to secure the indebtedness on the bond issue through which the construction was financed. As noted earlier, both the "lease" term and the "rent" were directly tied to the amounts due on the bond issue. The "rental" payments were made to First National, the trustee of the bond issue; and the "lessee" was *obligated* to purchase the pollution control system at the end of the "lease" term for the nominal consideration of $10.00. There can be no question that the parties intended this transaction to be a financing arrangement; courts of equity will not exalt form over substance. *See Matters of Kassuba*, 562 F.2d 511, 513 (7th Cir.1977).[1]

The Court's holding is supported by the approach taken on this issue in the personal property context by the Alabama State Legislature. Alabama Code Section 7–1–201(37) (1975) provides in pertinent part:

Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) *an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.*

*Ala.Code* Section 7–1–201(37) (1975) (emphasis added). If the collateral were personal property, the facts of this case would clearly fall within subsection (b) since New Central was obligated to purchase the "leased" equipment for the nominal consideration of $10.00.

In *Commerce Union Bank v. John Deere Indus. Equip. Co.*, 387 So.2d 787 (Ala.1980), the Alabama Supreme Court listed several factors from the case of *In re Alpha Creamery Co.*, 4 U.C.C. 794, 797–98 (Bktcy.W.D.Mich.1967) as indicia for distinguishing a true lease from a security interest. The Fifth Circuit Court of Appeals has stated that the Alabama Supreme Court has "adopted" the *Alpha Creamery* factors. *American Standard Credit v. National Cement Co.*, 643 F.2d 248, 261–62 n. 7 (5th Cir.1981).[2] The following is one of the listed factors:

Lease agreement which permits the lessee to become the owner at the end of the term of the lease for a nominal or for no additional consideration is deemed intended as a security agreement as a matter of law.

*Commerce Union Bank v. John Deere Indus. Equip. Co.*, 387 So.2d 787, 790 (Ala. 1980). Thus, because of all the various factors the Court must conclude that the "lease" in the instant case is "deemed intended as a security agreement as a matter

1. While the *Kassuba* court ruled that the parties to the transaction at issue in that case had intended a valid sale and leaseback arrangement, it also noted, "The issue presented in this appeal is extremely narrow." *Kassuba*, 562 F.2d at 513. In the *Kassuba* case, the lessee "disclaimed any contention that the transaction involved a hidden agreement between the parties." *Id.* This fact distinguishes *Kassuba* from the instant case since the Trustee has contended

and the Court has held that the parties intended this "lease" to be a hidden security arrangement.

2. While this Court disagrees with Fifth Circuit Court of Appeal's reading *Commerce Union Bank* as having "adopted" the *Alpha Creamery* factors, we are bound to follow the *American Standard* court's reading of the *Commerce Union Bank* case. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (adopting 5th Cir. law as of September 30, 1981).

of law." *Id.*[3] This conclusion is further buttressed by the subsequent actions of Hajoca in selling the purported "leased" assets to EDA for $40,000. (Hajoca is claiming as "rent" $172,424.52 for rental of collateral later sold by purported lessor for $40,000.00—thus, an unreasonable "rent").

The Court's analogizing this case to cases construing Article 9 of the Uniform Commercial Code finds support in the case of *Eurton v. Smith,* 357 So.2d 324 (Ala. 1978). In the *Eurton* case the Alabama Supreme Court ruled that a real estate lease-sale contract created an equitable mortgage. The fact that the instrument at issue in the instant case is denominated as a "lease" and not a lease-sale contract, is an insignificant distinction because the "lessee" in this case was also obligated to purchase the pollution control system at the end of the "lease" term.

The Court notes that this issue was considered in the case of *In re Kors, Inc.,* 13 B.R. 683, 5 C.B.C.2d 872 (Bkrtcy.D.Vt. 1981). The *Kors* case is distinguishable since that court ruled that the debtor's lessor was entitled to relief from stay to evict the debtor because the lessee was "estopped from claiming that the document in question [was] everything but a lease." *Id.* at 685, 5 C.B.C.2d at 875. Such is not the case here since the debtor at all times considered the "lease" to be a security device. In its disclosure statement, the debtor characterized I.D.B. as a secured creditor. Further, the debt owed to I.D.B. was treated as a separate class[4] in Articles

I and II of the debtor's PLAN OF REORGANIZATION to be paid in accordance with the bond issue. Lastly, in Article V of debtor's PLAN OF REORGANIZATION where the debtor either rejected or assumed executory contracts and leases, the debtor did not mention the I.D.B. "lease". Therefore, estoppel which was the basis of the *Kors* court's decision is not present in the instant case.

Having determined that the instrument in question is not a true lease but is instead a financing arrangement, the Court must now decide the rights of I.D.B. to which Hajoca became subrogated. This case is similar to *Matter of Patch Graphics,* 32 B.R. 373, 11 B.C.D. 889 (Bktcy.W.D.Wis. 1983) wherein the bankruptcy court ruled that the vendor under a Wisconsin land contract was not entitled to recover contract installments as an administrative expense. The $258,648.75 payment which Hajoca made on October 15, 1981 was, for all practical purposes, a payment on the bond indebtedness which was secured by the pollution control system. As mentioned earlier the Court disallowed Hajoca's claim for retiring the bond issue[5] on April 26, 1984; and no appeal was taken from that order.

██ The *Patch Graphics* court ruled that the claimant was entitled to adequate protection which was "already vouchsafed in the present instance by the substantial excess of the value of the property over the value of the vendor's lien." *Id.* at 375, 11

---

**3.** In the case of *Matter of Tillery,* 571 F.2d 1361 (5th Cir.1978), the Fifth Circuit Court of Appeals stated:

> Just as the inclusion of an option to purchase does not in and of itself make the lease one intended for security; so also, the exclusion of such an option does not ipso facto make it a "pure lease".

*Tillery,* 571 F.2d at 1366. This passage is not inconsistent with the Court's conclusion since the *Tillery* court was talking about any option and not an option to purchase for a nominal consideration at the end of the lease term. The *Tillery* court went on to hold the "lease" at issue in that case was a security agreement even in the absence of an option to purchase since the

"lessee" was acquiring an equity in the subject matter of the "lease."

**4.** Class 1 provided payment of "[a]ll costs and expenses of administration...." Article II of the plan made provisions for satisfying the claims of creditors and stated that the expenses of administration would be "paid in the ordinary course of business." Since the debt owed to I.D.B. was classified separately as Class 6, the debt owed to I.D.B. was clearly not considered by the debtor to be an ordinary rent expense.

**5.** In its claim for having retired the bond issue, Hajoca specifically included the "$258,648.75 previously paid".

B.C.D. at 890.[6] Since the Trustee has already abandoned the property and Hajoca has sold it to the Economic Development Administration for $40,000, whether Hajoca would be entitled to adequate protection or relief from the automatic stay in the absence thereof is moot.

Hajoca has cited to the Court the case of *In re Peninsula Gunite, Inc.*, 24 B.R. 593, 10 B.C.D. 80 (Bkrtcy.App.Cal. 1 9th Cir. 1982). The *Gunite* court reversed the bankruptcy court's ruling that a "lessor" was not entitled to an administrative expense priority. The Bankruptcy Appellate Panel remanded the case to the bankruptcy court to determine whether the "lease" was "a true lease or a security agreement couched in terms of a lease." *Id.* 595, 10 B.C.D. at 80. If the bankruptcy court found the "lease" to be a disguised security agreement, "the measure of compensation due the 'lessor' is the depreciation in the equipment leased while withheld from the lessor...." *Id.* 595, 10 B.C.D. at 81.

 The Court concludes the Hajoca will not be allowed an administrative expense priority to the extent of the depreciation of the pollution control equipment during the pendancy of the debtor's Chapter 11 case. Hajoca has made no claim for depreciation and has introduced no evidence establishing a monetary value for the Trustee to rebut. The claimant has, therefore, failed to meet its burden of persuasion. *See In re Davidson Transfer & Storage Co.*, 41 B.R. 805, 12 B.C.D. 461, 462 (Bktcy.D.Md.1984); *Matter of DeLorean Motor Co.*, 39 B.R. 157, 11 B.C.D. 1119, 1121 (Bkrtcy.E.D.Mich.1984); *see generally* 3 *Collier on Bankruptcy* Section 502.01[3]

(15th Ed.1984). Further, because a claim for depreciation is a new type of claim, Hajoca will not be permitted to assert such a claim by amendment after the last day to file proofs of claim which was July 15, 1982. *In re Int'l Horizons, Inc.*, 751 F.2d 1213 (11th Cir.1985).

## CONCLUSION

Because the agreement at issue in this case is not a true lease but is instead a disguised security arrangement, Hajoca is not entitled to administrative rent. Being subrogated to the rights of First National and I.D.B., Hajoca would have been entitled to adequate protection and an administrative expense priority to the extent of the depreciation of the property during the pendency of the debtor's Chapter 11 case. Because the Trustee has abandoned the pollution control system, the adequate protection issue is moot. Hajoca has failed to meet its burden of proof on the amount of depreciation and such claim if asserted, would be barred pursuant to Rule 302(e) of Federal Rules of Bankruptcy Procedure (1979).

---

6. The Court is aware of the fact that Alabama law on land sale contracts may be different from that of Wisconsin. *See Gay v. Tompkins,* 385 So.2d 973 (Ala.1980) (bond for title not an equitable mortgage). *But see Eurton v. Smith,* 357 So.2d 324 (Ala.1978) (lease-contract created equitable mortgage). The Supreme Court of the United States has stated, however, in *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946):

In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of

the state where it sits. *Erie R.R. v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188], has no such implication.... [B]ankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims should be allowed under equitable principals.

329 U.S. at 162–63, 67 S.Ct. at 240 (footnote omitted). Thus the allowance of claims is a question of federal law for the bankruptcy judge to determine. *See generally* 3 *Collier on Bankruptcy* Section 503.03 (15th Ed.1984).