### In re ADCOCK EXCAVATING, INC., Debtor.

### In re ADCOCK PAVING, INC., Debtor.

### Bankruptcy Nos. 83 B 2143, 83 B 2144.

United States Bankruptcy Court, N.D. Illinois, E.D.

June 20, 1984.

Bernard M. Baum, Louis E. Sigman, Alan H. Auerbach, Walter J. Reum, Chicago, Ill., for trustee of the Midwest Operating Engineers Fringe Benefit Funds.

Alexander Terras, Leann Pederson Pope, Frankel & McKay, Ltd., Chicago, Ill., for debtor.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter is before the court on the debtors' (Paving and Excavating) objection to claims for contributions to employee benefit plans filed in this Chapter 11 case by the Trustees of the Midwest Operating Engineers Fringe Benefit Funds ("Midwest"). The parties have agreed to submit the matter to the court and have filed the appropriate memoranda of law.

## ISSUE

The court must determine whether the debtor ceased doing business prior to filing the Chapter 11 petitions so that the time period for priority claims must be measured from a date prior to filing those petitions.

## FACTS

On February 15, 1983, Adcock Paving and Excavating filed voluntary Chapter 11 petitions. During the summer of 1983, Midwest had audited Adcock's payroll records for purposes of determining whether Adcock's monthly reports submitted to the union were accurate. Midwest later filed claims against Adcock Paving and Excavating which included amounts for services rendered in July, 1982. The amount in issue in this case is approximately $7,239.07, that amount representing services performed in July 1982.

Adcock Paving and Adcock Excavating are engaged in the paving and excavating businesses and employ various persons to perform that work at various sites. According to Midwest's audit, Paving had employed eight members of its Local during the summer of 1982. Two engineers remained until December, 1982. Excavating employed six engineers during the summer of 1982. One was employed on a part-time basis during January and February of 1983.

Pursuant to an uncontroverted affidavit of E. James Adcock, president of both corporations, it appears that Paving performed work for the Village of Downers Grove during November 1982 through June, 1983. Paving also performed work for the State of Illinois during December, 1982 and January, 1983. During January and February, 1983, Excavating performed work for two construction companies. According to the affidavit, Excavating employed four men through January, 1983. Paving sold its equipment to Excavating in October of 1983. Excavating continues to perform paving work.

Midwest has asserted that the time period for determining which claims are entitled to priority should date from December, 1982 because the debtor corporations ceased doing business then by discharging substantially all employees. Excavating and Paving have asserted that they did not cease doing business prior to the filing of the Chapter 11 petitions, and that the priority period should date from the time of filing the petitions.

## DISCUSSION

Section 507(a)(4) of the Bankruptcy Code governs priority status of claims for contributions to employee benefit plans and provides in relevant part:

(a) The following expenses and claims have priority in the following order:

(4) Fourth, allowed unsecured claims for contributions to employee benefit plans—

(A) arising from services rendered within 180 days before date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first...

11 U.S.C.A. Section 507(a)(4) (West 1979).

■ Where a debtor ceases doing business prior to filing a petition, the 180-day period will be measured from the date upon which the debtor is determined to have ceased doing business. *Id.;* 3 Collier on Bankruptcy, Section 507.04 (15th ed. 1982).

Legislative history of Section 507(a) explains that the purpose of the provision is to provide an extra measure of protection to employees of a troubled business who choose to remain with that business for as long as possible. That passage states, "The bill makes a third change by having measurement of the priority date from the date of the bankruptcy or from the cessation of the debtor's business, whichever occurs first. This will provide additional protection to the employees of a bankrupt enterprise." The same report states, however, that assuring that employees will not abandon a failing business for fear of not being paid "[i]n that sense contributes to financial rehabilitation." H.R.Rep. No. 595, 95th Cong., 1st Sess. 187 (1977), U.S.

Code Cong. & Admin.News 1978, pp. 5787, 6148, *reprinted in* App. 2 Collier on Bankruptcy, (15th ed. 1982).

Upon interpreting these passages from legislative history, one court has determined that a debtor has ceased doing business when it discharges all or substantially all of its employees. *In re Hellemann,* 4 E.B.C. 1514, 1517 (Bankr.C.D.Ill.1983).

In the present case, Midwest has asserted that Paving and Excavating discharged "all or substantially all" employees by December, 1982. In support of this assertion, Midwest relies upon its audits. A determination of a December 1982 "cessation of business" date would result in claims for services rendered in July, 1982 being afforded priority. It appears to the court that Paving and Excavating employed various persons at least through January, 1983. It appears, therefore, that the instant facts do not mandate a result similar to that reached in *Hellemann.*

This court, in considering the same passage from legislative history finds two additional factors important in the analysis of whether a debtor has ceased doing business. The court notes that the legislative history also refers to a concern for financial rehabilitation of the debtor. That concern indicates that a balancing approach is appropriate. The first additional factor is whether the debtor has ceased performing its usual work.

In *Hellemann,* the debtor stopped performing its usual work in December and filed a Chapter 7 petition the following Spring. Where that occurs, the correct result might be to protect the employees and prevent the debtor from defeating the priority period by maintaining that they are doing business even though they perform no regular work of the business.

In *Hellemann,* the principal of the debtor remained in business only to the extent of seeking new financing. When he could not procure those loans, he filed a Chapter 7 petition. In fact, the *Hellemann* court assumed that construction activities ceased

in December, *Hellemann*, 4 E.B.C. 1514, 1516 n. 4. Conversely, in the present case, according to the affidavit, some employees were on the payroll and debtor performed work, albeit on a seasonally reduced scale, during January and February of 1983, rather than performing merely administrative functions.

The final consideration is whether a debtor continues in business or liquidates. It seems to the court that where a debtor remains in business, the concern that the employer has manipulated the priority period at the employees' expense is diminished. Moreover, the fact that the debtor remains in business today lessens the concern that he in some way manipulated the employees to defeat the priority period. The fact also suggests that it is appropriate to consider financial rehabilitation of the debtor.

It appears to the court that the debtor did not, as did the debtor in *Hellemann*, discharge substantially all its employees prior to filing so as to conclude that it ceased doing business prior to the filing of the Chapter 11 petition. Additionally, based upon the documents before the Court, it appears that the debtor performed its usual work until the time of filing the petitions. Finally, the debtor continues to perform that work to the present time. Therefore, the claims for services performed in July should not be granted priority status and that is the order of the Court. However, Midwest is hereby granted leave to depose E. James Adcock, principal of the debtor pursuant to Rule 2004 of the Rules of Bankruptcy Procedure. Any examination should occur within 21 days from the date of entry of this order to expedite administration of this case. Should Midwest discover facts during the course of that examination which materially controvert the allegations of the affidavit submitted herein, Midwest may move the court for a hearing upon the issue of whether Paving and Excavating ceased during business prior to filing the Chapter 11 petitions. Such a motion must be made within thirty days from the date of entry of this order.

SO ORDERED.