### In re DAVIDSON TRANSFER & STORAGE CO., Debtor.

**Bankruptcy No. 82-2-1441.**

United States Bankruptcy Court, D. Maryland.

Aug. 28, 1984.

Lawrence D. Coppel, and Patricia M. Lambert, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., for debtor in possession.

Kent Cprek, Washington, D.C., Sagot & Jennings, Philadelphia, Pa., for claimants.

## MEMORANDUM AND ORDER ON OBJECTION TO PRIORITY WAGE CLAIMS 69a, ET AL.

JAMES F. SCHNEIDER, Bankruptcy Judge.

The debtor objected to the allowance of claims Nos. 69a, 106, 133, 154, 155, 162a, 165, 175, 189, 190, 191, 216, 249, 251, 252, 253, 256, 257, 263, 271, 272, 283, 294, 312, 326, 328, 329, 333, 341a, 349, 371, 390, 427, 439 and 456, both as to priority status and as to amount. The objection will be sustained as to amount and overruled as to priority status for the reasons stated below.

### Findings of Fact

1. The debtor terminated its General Freight Division on January 26, 1981.

2. Shortly after the shutdown, James Peter Pappas, then Vice President and Treasurer of the debtor, stated in a deposition that employees' claims for back wages and fringe benefits would be paid in full if the employees would forego immediate payment of these claims in order to allow the debtor to streamline and reorganize its other lines of business by selling the assets of its General Freight Division. The deposition was taken during the course of an injunctive proceeding brought by employees of the General Freight Division.

3. The employees agreed to the procedure and a stipulation of dismissal was entered dissolving an injunction against the sale or disposition of the assets of the debtor. *Highway Truck Drivers and Helpers Local 107 v. Davidson Transfer and Storage Co.*, Civil Action No. 81–0384 (E.D.Pa.1981).

4. The 35 wage, vacation, severance and sick leave claims in question arose within 90 days of the termination of the General Freight Division on January 26, 1981.

5. The debtor filed a Petition for Relief pursuant to Chapter 11 on August 13, 1982.

6. The 35 wage, vacation, severance and sick leave claims in question were filed between October 4, 1982, and March 25, 1983.

7. The proof of claim form used by the 35 claimants did not explicitly state that these are priority claims.

8. The debtor objected on May 21, 1984, to the allowance of the 35 claims as priority claims and to the amount of the claims. The debtor contended that the claims are not entitled to priority status because they arose more than 90 days prior to the commencement of this Chapter 11 case.

9. The debtor filed an affidavit by Gary J. Daniel, its Vice President and Treasurer, that the books and records of the debtor show that the amounts owed by the debtor to the claimants are those stated by the debtor in its objection, not those amounts claimed by the claimants.

10. The parties were directed by the Order Regarding Disposition of Objection to Allowance of Claim of May 25, 1984 to file such affidavits, memoranda and other pleadings as to entitle them to the relief sought in this matter.

11. Edward Yacobacci, the claimant on Claim No. 191, and the debtor stipulated that the Claim No. 191 be allowed as a general unsecured claim in the amount of $602.71. The stipulation has been approved by the Court.

12. The claimants argue that the 34 claims still in dispute have priority status for arising within 90 days of the termination of the General Freight Division.

13. Three of the claimants have written their counsel or the Court disputing the debtor's calculation of their claims and affirming the amounts stated on their proofs of claim. None of the claimants has filed an affidavit with the Court as directed by the Order Regarding Disposition of Objection to Allowance of Claim.

## Conclusions of Law

1. The claims in question will be deemed to have been filed as priority claims. Although the proof of claim form used by the claimants does not explicitly state that these are priority claims, the priority status of the claims is implicit from the claimants' statements in the proofs of

claim. Indeed, the debtor virtually conceded in its Memorandum in Support of Objection [P. 134], that the claims would be entitled to priority status if they arose within the relevant 90-day period under 11 U.S.C. § 507(a)(3) (1982).

2. Section 507(a)(3) provides third priority status for:

allowed unsecured claims for wages, salaries, or commissions, including vacation, severance and sick leave pay—

(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) to the extent of $2,000 for each such individual.

3. Counsel for the debtor has mischaracterized the relevant law by arguing that "(s)ince these claims arose more than 90 days prior to the commencement by Davidson of its Chapter 11 case (on August 13, 1982), none are entitled to priority under § 507(a)(3) of the Bankruptcy Code." Memorandum in Support of Objection [P. 134].

4. The termination of the debtor's General Freight Division on January 24, 1981, was the cessation of the debtor's business for the purpose of determining the priority status of wage and benefit claims by employees of that division.

5. The termination of a major division or subsidiary of a debtor is within the meaning of the statutory language specifying "the cessation of the debtor's business ...." Because a debtor may have more than one business, cessation of business does not come only when the last light is turned off in the debtor's last facility. Such a restrictive interpretation of the statutory language would defeat the implicit Congressional purpose of protecting employees of the debtor. *In re Seventh Ave. South, Inc.*, 10 B.R. 289, 291 (Bankr.W.D. Va.1981). In order to further the Congressional purpose, broad meaning is to be given "to the provisions of the Code as to relate to the facts rather than narrow re-

strictive meanings." *Id.* Such a restrictive interpretation would also encourage debtor employers to defeat priority status for pre-petition wage claims by delaying a final, technical cessation of business until more than 90 days after they have ceased any normal business operation.

 6. Equity also dictates a liberal interpretation of the cessation of business in this case. The claimants gave the debtor an extra year to reorganize its affairs outside of bankruptcy by agreeing to dismiss their injunction on the sale or disposition of the assets of the debtor. In return, the debtor promised to pay wage and benefits in full. The debtor would not be heard to renege on that promise by means of an overly strict, technical definition of cessation of business.

7. The debtor's objection to the amount of the 34 claims still in dispute must be sustained, however. By filing its affidavit and the schedules certified under penalty of perjury, the debtor has met its burden of going forward with evidence supporting its objection. *In re Friedman*, 436 F.Supp. 234 (D.Md.1977); 3 *Collier on Bankruptcy*, ¶ 502.02 (15th ed. 1984). The claimants have not met their burden of persuasion. *Id.*

8. Wherefore, the debtor's objection to the allowance of claims Nos. 69a, 106, 133, 154, 155, 162a, 165, 175, 189, 190, 216, 249, 251, 252, 253, 256, 257, 263, 271, 272, 283, 294, 312, 326, 328, 329, 333, 341a, 349, 371, 390, 427, 439 and 456 will be sustained as to amount and overruled as to priority. The 34 claims will be allowed as priority claims in the amounts stated in Schedule A to the debtor's objection [P. 133].

SO ORDERED.