**In re BODIN APPAREL, INC.,
Giamo, Inc., Debtors.**

**No. 85 Civ. 2119 (RJW).**

United States District Court,
S.D. New York.

Nov. 7, 1985.

Angel & Frankel P.C. (Stuart I. Gordon, of counsel), New York City, for debtors.

Max Zimny (Seth Kupferberg, of counsel), New York City, for ILGWU.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

Appellant Bodin Apparel, Inc. ("Bodin") appeals from an order entered February 11, 1985 by Judge Burton R. Lifland, Bankruptcy Court for the Southern District of New York, granting priority status to $32,-964.98 of a claim totaling $224,137.68 for contributions due an employee benefit plan, the ILGWU Southeast Region Health and Welfare Fund (the "Fund"). *In re Bodin Apparel Inc.*, 46 B.R. 555 (Bankr.S.D.N.Y. 1985). Jurisdiction over this appeal lies under 28 U.S.C. § 158. For the reasons hereinafter stated, the Court affirms Judge Lifland's decision.

## FACTUAL BACKGROUND

Only essential points of the stipulated or uncontested facts of this case need be repeated here. Bodin conducted as its principal business the design, manufacture and sale of coordinated contemporary sportswear. The company provided retirement benefits to covered International Ladies' Garment Workers Union ("ILGWU") employees by participating in the Fund. The Fund is an employee benefit plan that qualifies for priority under § 507(a)(4) of the Bankruptcy Code, 11 U.S.C. § 507(a)(4).

During 1980, Bodin's business soured. By the end of 1980, the company ceased making clothing altogether. Bodin completed the sale of its main manufacturing plant and substantially all machinery before July 31, 1980. Although not determined precisely below, the following dates reflect the best approximation available to the bankruptcy court of the times Bodin last either held assets or performed various activities related to clothing manufacture:

| | |
|---|---|
| Manufactured clothing | September 1980 |
| Accepted material for manufacture of clothing | October 1980 |
| Maintained facilities to produce clothing | October 1980 |
| Shipped finished goods | December 1980 |

Sometime after its business began to decline in 1980, Bodin stopped making the required contributions to the Fund al-

though it continued to employ at least forty-eight ILGWU employees through September, 1980. The Fund sought and won an arbitration award for the lapsed payments. Bodin eventually filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq., on November 23, 1981. The Fund presently holds a valid but unsecured arbitration award for unpaid contributions totaling $224,137.68.

Roughly one year after filing its petition, Bodin emerged from Chapter 11 proceedings as JSN Industries Inc. ("JSN"). As stated in its prospectus, JSN intends to acquire other companies in various businesses and to use the substantial loss carry forwards it inherited as Bodin's successor in interest to offset their current income. Only these loss carry forwards survive the reorganization; Bodin Apparel Inc. no longer exists.

The bankruptcy court's decision to grant priority to a portion of the unsecured arbitration award turns on Bodin's activities between November 1980 and November 23, 1981, the day Bodin filed for reorganization. As petitioner describes its own activities, "[c]ommencing in November 1980, the Debtor's main function was to liquidate their tangible assets and to reorganize their business on the basis of a net operating loss carry forward." Petitioner's Memorandum at 3. To that end, Bodin carried Mr. Barry Feldman on the payroll as its sole employee after March 1981. In light of these activities, the bankruptcy court determined that Bodin had ceased doing business by October 31, 1980. The $32,-964.98 judgment awarded by the court represents the amount of the unpaid contributions that became payable during the six months immediately preceding October 31, 1980.

In deciding to grant priority to a portion of the Plan's claim, the bankruptcy court interpreted the phrase "cessation of the debtor's business" as contained in § 507(a)(4) to mean cessation of the debtor's principal business operations. After examining Bodin's activities during the rel-evant period, Judge Lifland found that "[r]ather than acquiring or producing, Bodin was engaged in liquidating. Activities incidental to the liquidation of a corporation do not constitute conducting business." In re Bodin, supra, 46 B.R. at 561.

The sole issue on appeal concerns whether the reorganization activities carried on by Bodin after October 31, 1980 constitute sufficient activity of a kind that would amount to "doing business" for the purpose of defeating the Fund's priority claim under § 507. If Bodin did carry on business during the period between October 31, 1980 and November 23, 1981, the Court must measure priority from November 23, 1981, the date Bodin filed its petition for reorganization. Since no contributions to the Fund accrued during the six months preceding November 23, 1981, such a determination would defeat entirely the Fund's claim of priority.

## DISCUSSION

On appeal, district courts review factual determinations made by the bankruptcy court to ensure that they are not clearly erroneous. Bankr.R. of Procedure 8013; see 1 Collier on Bankruptcy ¶ 3.03[7] at 3–131 (15th ed. 1985). The Court must, however, review de novo questions of law or mixed questions of law and fact. Caswell v. Lang, 757 F.2d 608 (4th Cir.1985); In re New England Fish Co., 749 F.2d 1277 (9th Cir.1984); In re Tesmetges, 47 B.R. 385 (Bankr.E.D.N.Y.1984). Since the parties stipulated to the facts and appellant disputes only Judge Lifland's construction of § 507, de novo review is appropriate. Having reviewed the bankruptcy court's thorough analysis of the legislative history of § 507, this Court concurs in its conclusion that Bodin had ceased doing business within the plain meaning of § 507 by October 31, 1980.

Section 507(a) of the Bankruptcy Code, 11 U.S.C. § 507(a), creates and orders expenses and claims entitled to priority treatment in disbursing a bankrupt's assets. The fourth priority category covers "unsecured claims for contributions to employee

benefit plans ... arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first." 11 U.S.C. § 507(a)(4). In enacting § 507(a)(4), Congress sought to extend priority protection to compensation paid in a form other than wages. By allowing both wage and benefit priority to date from either the filing of the petition or the "cessation of business," Congress intended to eliminate potentially arbitrary results of using the petition date as the measuring point and, furthermore, to foreclose the possibility that employers might defeat wage and benefit priority simply by waiting six months once operations ceased to file the petition. See In re Bodin, supra, 46 B.R. at 558–60 and authorities cited therein.

Bodin argues that an entity which had ceased business could not petition for reorganization, liquidate assets or even reorganize. Brief for Appellant at 11. The obvious implication of accepting such an argument is that virtually any activity on the debtor's part would defeat a contention that the debtor had ceased doing business prior to filing the petition in bankruptcy. Given Congress' clear intent to extend and rationalize the protection afforded the employees of a failing businesses, however, the term "cessation of business" must be construed broadly as the bankruptcy court decided rather than with the exacting literalness that petitioner urges upon the court. See In re Davidson Transfer & Storage Co., 41 B.R. 805, 807 (Bankr.D.Md.1984); In re Seventh Ave. South, Inc., 10 B.R. 289, 291 (Bankr.W.D.Va.1981).

As Judge Lifland recognized, determining how much activity can still in fairness amount to a "cessation of business" necessarily implicates its elusive converse of how little activity constitutes doing business. Fortunately, however, this case presents no vexing subtleties. Until 1980, Bodin manufactured clothing. During late 1979 and 1980, the company progressively scaled back its operations until by September 1980 it no longer made any clothing. By October 31, 1980, Bodin had sold its

manufacturing facilities, had accepted what proved to be its last shipment of fabric, and had released all of the employees covered by the Fund. Bodin's successor in interest, JSN, has never made clothing. Rather, it exists only to take advantage of the Bodin losses it can carry forward to apply against the current income of companies it hopes to acquire. After October 1980, Bodin did no work except that normally expected of a company winding down its affairs and that required to organize JSN. Bodin had ceased to do business within any common understanding of that phrase, and surely within the understanding of Congress, given its clear intent to protect the employees of bankrupt entities. To hold otherwise would frustrate Congress' intention in enacting § 507(a)(4) of the Bankruptcy Code to provide an alternative point, the time at which a company ceased business, from which to measure priority.

What little precedent exists supports this conclusion, petitioner's strained attempt to distinguish those cases notwithstanding. In re Davidson Transfer & Storage Co., 41 B.R. 805 (Bankr.D.Md.1984), involved the termination of the freight division of a company that otherwise continued its operations. As the court held there, "[b]ecause a debtor may have more than one business, cessation of business does not come only when the last light is turned off in the debtor's last facility." Id. at 807. Although the court mentioned equitable considerations that further supported its holding that the debtor ceased doing business within the meaning of § 507(a) when it terminated the division, the case turned on the court's construction of the statute. In re Stunzi U.S.A., Inc., 7 B.R. 401 (Bankr. W.D.Va.1980), likewise turned on no special facts. That Stunzi gave its employees notice of "immediate cessation" hardly distinguishes that case from the one at hand. Both Stunzi and Bodin used regular employees as they went about winding down their affairs. Indeed, the Stunzi court had no difficulty at all determining that the company had ceased business despite some continuing but limited activity.

As petitioner notes, the court in *In re Adcock Excavating, Inc.*, 42 B.R. 84 (Bankr.N.D.Ill.1984), did set out a rule of thumb to aid it in determining when a debtor has ceased doing business. That test looks first to see whether at some point prior to filing for bankruptcy the debtor had discharged substantially all its employees and second to whether the debtor had ceased performing its usual work and whether the debtor had liquidated or continued in business. *Id.* at 85–86. Applying the test, the court found that although Adcock had discharged some of its employees, it had not discharged substantially all of them. *Id.* at 87. Furthermore, Adcock had continued its regular paving business, albeit at a seasonably reduced scale. Without expressly adopting the test set forth in *Adcock*, this Court fails to see how Bodin can shoehorn itself into its contours given that it ceased making sportswear at all and retained only Mr. Feldman, an employee not covered by the Fund, on its payroll.

■ Petitioner now insists, however, that the Fund failed to prove any intent by Bodin to manipulate the priority period, that the trustee confirmed Bodin's plan of reorganization, and that its successor JSN is publicly traded. These assertions miss the mark. The Fund need not prove any intent, but only that Bodin ceased business by some particular date before it filed its petition. Bodin's eventual reorganization into another publicly traded company for the purpose of utilizing tax writeoffs is simply irrelevant to determining when Bodin ceased business.

Petitioner's effort to itself to style itself a Chapter 11 debtor in possession that merely changed the direction of its operations is similarly unavailing. Bodin's successor JSN, divested of Bodin's manufacturing facilities, possesses only the economic asset of the loss carry forwards accumulated by Bodin. Bodin eliminated its entire interest in clothing manufacture and released all employees who were covered by the Fund. JSN simply is not a debtor that has trimmed its operations but continues its business and retains its facilities. *Cf. Adcock Paving, supra.*

Nor does the manufacturer who has ceased producing a product and turned to licensing provide an apt comparison since Bodin licensed nothing. Because the case does not present the issue, the Court need not decide whether Congress intended to extend § 507 priority to wage and benefit claims under such circumstances.

## CONCLUSION

■ Having reviewed *de novo* the record of the bankruptcy proceeding below, the Court concludes that Bodin ceased doing business no later than October 31, 1980 when the company last maintained facilities to produce clothing. Under § 507(a)(4) of the Bankruptcy Code, therefore, priority status attaches to the $32,964.98 worth of lapsed contributions that accrued to the Fund during the six months immediately preceding October 31, 1980. Accordingly, the Court affirms Judge Lifland's decision.

It is so ordered.