K.K. HALL, Circuit Judge:
Davidson Transfer & Storage Company (“Davidson”), a corporation engaged in the transportation and moving business, is a debtor currently under the protection of Chapter 11 of the Bankruptcy Code. In this consolidated appeal, certain former employees of Davidson, the Highway Truck Drivers and Helpers Union, Local 107, the Teamsters Pension Trust Fund of Philadelphia, and the Teamsters Health and Welfare Fund of Philadelphia, appeal an order of the district court reversing a determination of the bankruptcy court and denying appellants priority status pursuant to 11 U.S.C. § 507(a)(3) and (4) with regard to their claims against Davidson. Finding no error in the district court’s interpretation of the statute, we affirm.
I.
Prior to 1981, Davidson was a substantially larger operation than it is today. It employed over 800 employees and conducted its business through four wholly-owned subsidiaries and four operating divisions. Unlike the subsidiaries which were separate corporate entities, the operating divisions had no individual legal identity.
Davidson began to experience financial distress in 1980 which was largely attributable to losses incurred by its General Freight Division. As a result of those losses, Davidson elected to close the General Freight Division on January 26, 1981, thereby discharging approximately 600 of its employees. A number of those employees subsequently filed suit in the district court seeking to restrain Davidson from disposing of General Freight Division assets until certain claims for severance pay and unused sick leave were satisfied.
It is undisputed that the wage-related claims involved in the 1981 suit are the same claims at issue in this appeal. It is further undisputed that all of those claims arose within ninety days before the General Freight Division was closed.
In connection with the 1981 legal proceedings, the deposition of Davidson’s Treasurer, James Pappas, was taken. Pap-pas stated that although there was no guarantee of success, Davidson hoped to reorganize itself and remain in business. He indicated, however, that if the orderly sale of the company’s assets were restrained by the ongoing legal action, the company might be forced into bankruptcy. He further opined that if the company remained afloat, the employees would, in time, receive full payment for their wage claims, but that if a forced bankruptcy ensued, a recovery of fifteen to twenty cents on the dollar would be more likely. Shortly after Pappas’ deposition was taken, the employees voluntarily dismissed their suit.
Davidson’s effort at financial reorganization continued. Despite the radical restructuring, however, the attempt proved unavailing and on August 13, 1982, the company sought protection under Chapter 11 of the Bankruptcy Code. At the time it filed for bankruptcy, Davidson had still not satisfied the 1981 wage claims. The company had also failed to pay certain pension contributions owed to plans which had covered employees of the General Freight Division. It is conceded that the latter claims arose within 180 days before the General Freight Division ceased operations in 1981.
Davidson subsequently proposed a reorganization plan which was confirmed on March 29, 1984. The plan provided that creditors with priority status under the Bankruptcy Code would receive full payment while those without priority would receive ten to twenty cents on the dollar. Claims for statutory priority pursuant to 11 U.S.C. § 507(a)(3) and (4)[1] were made *1123 with regard to the 1981 wage claims and the unsatisfied pension obligations. Davidson objected to those claims on the ground that the debts were not incurred within the time limits set forth in the statute.
Davidson’s objections were heard by the bankruptcy court, which concluded on August 28, 1984, that both the wage and pension claims were entitled to priority. The court reasoned that the closing of Davidson’s General Freight Division amounted to “cessation of the debtor’s business” under the statute with regard to both classes of disputed claims and that the claims had arisen within the statutory time limits prior to that cessation. The bankruptcy court also determined that equity favored granting priority status to the 1981 wage claims, because the employees had agreed to withdraw those claims in order to allow Davidson’s reorganization effort.
Davidson appealed the denial of its objections to the district court which rejected the bankruptcy court’s interpretation of 11 U.S.C. § 507. The district court held that the debtor in the bankruptcy proceedings was Davidson and not the General Freight Division. The court further held that the closing of a major subdivision was not a cessation of the debtor’s business. Finally, the district court dismissed as “clearly erroneous” the bankruptcy court’s conclusion that there had been an agreement whereby the employees withdrew their wage claims in 1981.
Accordingly, the district court denied priority status to the wage and pension claims. This appeal followed.
II.
In this consolidated appeal, appellants contend that the broad construction of the phrase “cessation of the debtor's business,” articulated by the bankruptcy court, best serves the congressional intent that wage priority statutes be liberally construed. Appellants also argue that the district court’s interpretation of the statute allows an employer to manipulate and evade the priority rights of its employees. We see no merit in these contentions.
As a threshold matter, we agree with the district court that there are no particular equities favoring the claimants who are advancing the 1981 wage claims. The record is utterly devoid of any support for the bankruptcy court’s conclusion that the employees withdrew those claims pursuant to an agreement with Davidson. Rather, the employees, after considering the deposition statements of Davidson’s treasurer, appear to have made a reasoned, albeit unsuccessful, choice between difficult alternatives. The fact that claimants could have achieved priority status had they forced their employer into bankruptcy in 1981, has no bearing on an assertion of priority in 1982.
As the district court correctly recognized, the proper resolution of this case with regard to both the wage and pension claims requires nothing more than a sound exercise in statutory interpretation. The unambiguous language of § 507(a)(3) and (4) links priority status to the “cessation of the debtor’s business.” The debtor in these proceedings clearly is Davidson, not its General Freight Division, and the debt- or’s business, although much reduced, has never ceased.
Appellants argue that a major subdivision of a debtor should be regarded as a separate line of business for the purposes of determining cessation and, by extension, priority. We can find no support for that proposition in bankruptcy law. Indeed, the authorities cited by appellants are drawn exclusively from decisions interpreting the Internal Revenue Code, such as Malmstedt v. Commissioner, 578 F.2d 520 (4th Cir.1978). Concepts developed in one technical field of the law, however, have little application outside the specialized context in which they were originally articulated.
We also reject any suggestion that our interpretation of the statute allows employer manipulation of priority claims. In deciding whether a debtor has ceased business, the bankruptcy courts are not bound *1124 by legal formalism. A court may always pierce a paper existence and determine whether a business has, in fact, discontinued its operations. See e.g. In re Bodin Apparel, Inc., 46 B.R. 555 (Bankr.S.D.N.Y.1985) aff'd, 56 B.R. 728 (S.D.N.Y.1985). In this instance, there is not the slightest suggestion that Davidson’s continued operation after 1981 was a sham intended to defeat its employee’s claims. Indeed, we agree with the district court that the record demonstrates a sincere and energetic effort to preserve that portion of the business remaining after the 1981 reorganization. Although wage priority statutes are to be liberally construed in order to protect employees from unscrupulous conduct by their employers, a rule of liberal construction does not allow a court to disregard the plain language of the statute.
III.
For the foregoing reasons, the decision of the district court denying all claimants priority status pursuant to 11 U.S.C. § 507 is affirmed.
AFFIRMED.

. 11 U.S.C. § 507(a)(3) and (4) provide in pertinent part that:
(a) The following expenses and claims have priority in the following order:
(3) Third, allowed unsecured claims for wages, salaries or commissions, including vacation, severance, and sick leave pay—
(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor’s business, whichever occurs first;
(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
(A) arising from services rendered within 180 days before the date of the filing of the *1123 petition or the date of the cessation of the debtor’s business, whichever occurs first.