**In re ALLIED SIGN COMPANY, INC., Debtors.**

**C. Michael Smith, Plaintiff,**

**v.**

**Karen Fendley, f/k/a Karen Peterson, Defendant.**

**Bankruptcy No. 99–10488–MAM–7. Adversary No. 00–1096.**

United States Bankruptcy Court, S.D. Alabama.

Jan. 26, 2001.

C. Michael Smith, Mobile, Alabama, trustee.

A. Richard Maples, Jr., Mobile, Alabama, for defendant.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARGARET A. MAHONEY, Chief Judge.

This matter is before the Court on the motion of the Trustee, C. Michael Smith, for Summary Judgment and the motion of

Defendant, Karen Peterson, for Summary Judgment in this adversary matter. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is denying the motion of Plaintiff for summary judgment and granting the motion of defendant for summary judgment.[1]

## FACTS

On May 10, 1994, a computer component for a router was purchased from PC Net, Inc. Defendant issued a check for the computer component directly to PC Net in the amount of $3,062.34. The check indicated it was "For Allied Sign Co., Inc." On May 19, 1994, an Airtech Vacuum system from Airtech, Inc. was purchased and was also paid for directly by Defendant with a check in the amount of $2,260.00 that indicated it was "For Allied Sign Co., Inc." On May 26, 1994, Allied Sign purchased an AR Router and Premier 4.1 software from Sign Plex by issuing a check in the amount of $ 49,837.05 made payable to Sign Plex. On that same day, Defendant issued a check to Allied Sign in the amount of $58,000.00 which indicated it was "For Router."

On June 3, 1994, Defendant's father, Gordon Peterson, took out a loan from Minden Exchange Bank & Trust in the amount of $57,969.84 for the stated purpose of "purchasing equipment for business." The entire loan was due in a single payment of $59,184.82 on September 1, 1994. Defendant took out a loan on August 15, 1994, from Minden Exchange Bank & Trust in the amount of $65,523.32

and agreed to make payments of $1344.56 per month, a total of $96,808.32. Defendant's affidavit states that this was a refinancing of the loan originally taken out by her father.

On June 7, 1994, Defendant's husband and the sole owner of Allied Sign, T.A. Harding Fendley, executed a document titled "Lease Agreement" under which Allied Sign was to lease the Router, the Airtech vacuum system and the computer component in return for the payment to Defendant and her husband of $1,347.14 each month for 72 months. The payments total $96,994.08. Under the agreement the equipment was to remain at Allied Sign and Allied Sign was to provide property insurance covering the equipment. This "lease" document was signed only by Mr. Fendley. According to Defendant, the transaction was intended to be a lease and was structured as such to allow defendant and her husband to borrow money to purchase the equipment and to deduct the depreciation of the equipment on their tax returns. Defendants offered copies of documentation evidencing federal deductions taken by Defendant and her husband in the amount of $9,213 in 1994, $15,789 in 1995 and $11,276 in 1996 for a total of $36,278. The tax documents list the cost or basis of the property as $64,470.

On February 8, 1999 Allied Sign filed for relief pursuant to chapter 7 of the Bankruptcy Code. On April 27, 2000 the Trustee, C. Michael Smith, conducted a public sale of the Assets of Allied Sign including the router and all component parts. The highest offer for the router and all component parts was $20,000. Premier Capital Funding tendered a check in the amount of $20,000 to Defendant, Karen Fendley,

---

1. The parties indicated that these motions and accompanying documents and affidavits constituted all of their evidence on this matter and summary judgment should be granted to one party or the other.

for the purchase of the router and router components.

## LAW

### A.

The Trustee, C. Michael Smith, filed this adversary complaint to determine title to the router and router components. Both parties have filed motions for summary judgement. Rule 7056 states that the Court shall grant summary judgment to the moving party if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056(c). The moving party bears the burden of proving that there is no issue of material fact. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court found that a judge's function is not to determine the truth of the matter asserted or weight of the evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson*, at 249, 106 S.Ct. 2505. In making this determination, the facts are to be looked upon in the light most favorable to the nonmoving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All inferences are resolved in favor of the party defending against each motion. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844 (11th Cir.2000); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997).

### B.

The parties have each filed summary judgment motions so they will each be judged in turn on their merits as if the opposing motion constitutes a response. The Plaintiff's motion was filed first so it will be considered first; then Defendant's motion will be considered. In the end the Court must weigh which side produced the greater weight of evidence.

■■ The issue presented is whether the transactions surrounding the router and router components constitute a true lease under which Karen Fendley maintains ownership of the property or whether Allied Sign owned the property and Fendley only maintained a security interest. There is a document purporting to be a "lease." However, we must "gather the intention of the parties from the entire instrument without regard to its form, or technical terms used therein." *Commerce Union Bank v. John Deere Indus. Equipment Co.*, 387 So.2d 787 (Ala.1980) (citations omitted).

A "lease" intended as security is an agreement in which the ultimate intent is a sale. *Sharer v. Creative Leasing, Inc.*, 612 So.2d 1191 (Ala.1993) (citing *In re Atlanta Times*, 259 F.Supp. 820, 827 (N.D.Ga. 1966)). Ala.Code § 7–1–201(37) defines security interest:

(37) a. "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 7–2–401) is limited in effect to a reservation of a "security interest." ...

b. Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and 1. the original term of the lease is equal to or greater than the remaining economic life of the goods, or 2. the lessee is bound to renew the lease for the remaining economic life

of the goods or is bound to become the owner of the goods, or 3. the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or 4. the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

c. A transaction does not create a security interest merely because it provides that:

1. the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

2. the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,

3. the lessee has an option to renew the lease or to become the owner of the goods,

4. the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

5. the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

Under the facts of this case, there is no option to purchase, therefore the Court must turn to the other terms of the agreement.

■ The agreement states that the term of the lease is 72 months with payments of $1,347.14. The payments are almost identical to the Defendant's payments under her loan agreement with Minden Exchange Bank and the total amount paid under this agreement is only $185.76 more than the total amount to be paid under Defendant's loan agreement. The fact that this agreement mirrors the loan agreement is evidence that the parties intended the transaction to be a loan and sale rather than a lease.

■ The fact that Allied Sign was responsible for insurance on the property is also evidence that Allied Sign is more than a lessee of the property. However, as stated above in Ala.Code § 7–1–201(37) a transaction does not create a security interest merely because it requires the lessee to assume the risk of loss or to agree to pay insurance with respect to the goods.

■ The ownership of tax benefits is a "traditional indication that the parties intended to enter a true lease." *Sharer v. Creative Leasing, Inc.*, 612 So.2d 1191 (Ala.1993) (citations omitted). To this Court, it is a strong indication of intent since fraudulent tax filings carry heavy penalties and tax filings are under oath. See 26 U.S.C. § 7206(1) (stating penalty of perjury is felony punishable by maximum of $100,000 ($500,000 in the cases of a corporation), or imprisonment for not more than three years). Defendant and her husband took tax deductions for the property for three consecutive years totaling $36,278. This is a little more than half the $64,470 amount listed on defendants tax documents as the basis of the property or of the $65,523.32 amount that was actually borrowed by defendant. Based on the deductions taken, the economic life of the equipment would probably be about 6

years, or 72 months, the same as the term of the "lease" agreement and defendants loan agreement. The fact that the economic life of the equipment is equal to the term of the "lease" agreement is an indication that they did not intend the agreement to be a true lease. However, although the agreement states that it was for a period of 72 months it is silent as to the right of termination and the general rule is that in the absence of an agreement between parties, a lease may be terminated upon proper notice. See *Brown v. Williams,* 576 So.2d 195 (Ala.1991). Therefore, the facts of this case do not fall squarely within the definition of security interest provided by Ala.Code § 7–1–201(37)(b). This risk of termination is also a strong indicator to this Court that it is a lease.

The facts should be considered in light of "the nature of the transactions, the situation and relationship of the parties, and the purposes sought to be achieved by them." *Commerce Union Bank v. John Deere Indus. Equipment Co.,* 387 So.2d 787 (Ala.1980) (citations omitted). In evaluating the facts mentioned above we must consider the fact that Allied Sign was owned solely by Defendant's husband when the agreement was signed. The cursory nature of the agreement probably results from the fact that the agreement was between Mr. Fendley and Mr. Fendley's own company. The structure of the transactions involved follow the stated intention of Defendant to allow her and her husband to borrow money to purchase the equipment and to deduct the depreciation of the equipment for tax purposes. As stated above the ownership of tax benefits is a traditional indication that the parties intended to enter a true lease. The filing of three tax returns consistently claiming ownership is very persuasive evidence of intent. Mrs. Fendley's affidavit testimony is also unrebutted. Therefore, this Court looking at the facts in the light most favorable to Defendant cannot find that the transaction is a security interest as a matter of law. The inferences to be drawn militate against summary judgment for Plaintiff.

Conversely, looking at the transaction in the light most favorable to Plaintiff and taking into consideration the undisputed testimony of Karen Fendley about the intent of the parties to enter into a true lease, the fact that the structure of the transaction generally follows that intention, and the evidence of tax filings this Court finds that the transaction is a true lease as a matter of law. The evidence of Fendley outweighs the evidence of Allied Sign.

THEREFORE, IT IS ORDERED AND ADJUDGED:

1. The motion of Plaintiff for summary judgment is DENIED.

2. The motion of Defendant for summary judgment is GRANTED and the router component and Airtech Vacuum system are declared to be the property of Karen Fendley Peterson.