This is an appeal from a judgment based on a directed verdict entered at the close of the evidence against the plaintiff, Harvey Rhyne a/k/a Harvey Tackett (hereinafter "Rhyne"), and in favor of the defendants, H B Motors, a partnership, and Johnny Wayne Borders, in an action for malicious prosecution. We reverse and remand.
On August 9, 1985, Rhyne purchased a 1974 Pontiac Grand Prix automobile from the defendant, H B Motors. Rhyne paid $100 down and agreed to pay the balance of $824 in weekly installments: $75 on August 16, 1985, and $250 each week thereafter. Rhyne received a bill of sale for the automobile and signed a promissory note and a security agreement.
In negotiations prior to the sale, Rhyne identified himself as "Harvey Rhyne." No mention of any alias was made. He also stated that he was employed at Steel Processing Service in Albertville, Alabama. *Page 309 
He said that he had been working there for about three months and that he usually worked between 40 and 50 hours a week. No attempt was made by anyone at H B Motors to verify any of this information prior to the completion of the sale.
Although the record is not clear as to the exact time, sometime after the sale, Johnny Borders, a partner in H B Motors, became aware of the fact that, contrary to Rhyne's assertion, he was not employed at Steel Processing Service. Borders learned that Rhyne, the day before the sale, had quit his job at Steel Processing Service, after having worked there only about three weeks.
On September 18, 1985, after Rhyne had failed to make any payment on the automobile beyond the original down payment, Borders went to Grove Oak, Alabama, to locate Rhyne and to determine why the payments had not been made. Rhyne had given as his address: Route 1, Box 66, Grove Oak, Alabama.
Apparently, while asking for directions to Rhyne's residence, Borders was informed by persons familiar with the address that the name "Harvey Rhyne" was incorrect. Borders was told that the person he was seeking was known, in Grove Oak, at least, only as "Harvey Tackett." Borders also learned, although the record does not indicate how, that mail had been received at this address in the name of "Harvey Tackett."
As he approached the house, Borders noticed that a car which resembled the one Rhyne had purchased from H B Motors was parked nearby. However, this car was in a much worse condition than that which had been purchased. Indeed, from the record, it is unclear whether this was the same car Rhyne had purchased from H B Motors. Borders's attempt to get someone in the house to answer his knocks at the door were unsuccessful. However, he testified that he heard persons moving around inside. Borders left the premises.
Later, on the same day as his visit to Rhyne's residence, Borders decided to seek a warrant for Rhyne's arrest. A warrant for his arrest was issued by a magistrate for Marshall County, and, on that same day, Rhyne was arrested on a charge of first degree theft of property by deception (§§ 13A-8-2, -3, Code of 1975). Although Borders indicated in his testimony at trial that he discussed the possibility of Rhyne's arrest with the district attorney, no assertion was made that such a warrant was sought on the basis of any advice given by such district attorney.
Rhyne was released from jail on October 29, 1985. The record indicates that the charge against him was dismissed on motion of the district attorney. No costs were taxed.
On December 3, 1985, Rhyne filed suit in Marshall Circuit Court against both Borders, in his individual capacity, and H B Motors, for malicious prosecution. At trial, at the close of the evidence, each party moved for a directed verdict. The trial judge directed a verdict in favor of the defendants. He gave two grounds for the directed verdict: (1) that probable cause for the arrest had been established as a matter of law; and (2) that Rhyne had compromised his claim in order to gain the dismissal of the criminal action. Rhyne appeals. We consider the propriety of the directed verdict on the latter ground first.
As authority for the determination that Rhyne had lost his right to sue for malicious prosecution because of a compromise, the trial court cited Chatman v. Pizitz, Inc., 429 So.2d 969
(Ala. 1983). In Chatman, it was explained:
 "[W]here defendant's proof of compromise is unchallenged by plaintiff, notwithstanding plaintiff's proof of dismissal of the criminal charge, defendant is entitled to judgment as a matter of law. To paraphrase the Restatement: A malicious prosecution plaintiff, having bought his peace, may not thereafter assert that the criminal proceedings were terminated in his favor."
429 So.2d at 971-72. While the validity of this principle is undisputed, it does not control under these facts.
In Chatman, we stated: *Page 310 
 "[W]here the parties join issue by way of pleadings and proof with respect to the defense of compromise, that issue is to be resolved by the jury like any other triable issue of fact."
429 So.2d at 972. Although the defense of compromise does not affirmatively appear in the pleadings, it is clear that evidence regarding compromise was admitted on behalf of the defendant without objection. It is also clear that evidence was offered by the plaintiff to rebut the inference of a compromise by him.
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 15(b), A.R.Civ.P. This includes those affirmative defenses which are raised by evidence admitted at trial without objection. Haynie v. Byrd, 429 So.2d 973 (Ala. 1983); Bischoffv. Thomasson, 400 So.2d 359 (Ala. 1981). See C. Wright A. Miller, Federal Practice Procedure, § 1492 (1971).
After the issue of compromise had been raised, Rhyne offered proof to show that he had not "compromised" or "settled" any claim. He testified that he gave no rights to the defendants they did not already have by way of the original contract to purchase the automobile. Borders agreed with his testimony. In effect, Rhyne argues that the defendants simply decided to drop the charges and abandon the prosecution. This evidence, we believe, is sufficient under the rules set out inChatman to entitle Rhyne to go to the jury on the issue of compromise.
Normally, a decision sending the issue of compromise to the jury would be determinative of an appeal from a directed verdict in a malicious prosecution case, because it would require, as did the facts in Chatman, that the issue of probable cause also be determined by the jury. See Chatman,supra. However, independent of the compromise issue, special circumstances in this case necessitate our addressing the issue of whether probable cause existed.
Stated simply, the evidence indicated that Rhyne and the defendants had entered into a security agreement when the automobile was purchased. The facts establishing the existence of this valid security agreement are undisputed.
"Probable cause," as the term is employed in actions for malicious prosecution, is such a state of facts in the mind of a prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person is guilty of the crime charged. Gulf StatesPaper Corp. v. Hawkins, 444 So.2d 381 (Ala. 1983); Green v.Norton, 233 Ala. 489, 172 So. 634 (1937).
Rhyne was charged with the offense of theft of property in the first degree (§ 13A-8-3, Code of 1975). Theft of property is defined in § 13A-8-2 as follows:
 "A person commits the crime of theft of property if he:
 "(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
 "(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property." (Emphasis added.)
Under former Alabama law, it was recognized that one who obtained goods on credit by false pretenses involving the statement of a fact as to the pecuniary condition or financial responsibility of the accused was chargeable with the crime of false pretenses. See, e.g., Dennis v. State, 16 Ala. App. 115,75 So. 707 (1917). False pretenses, as it was defined in the past, would now constitute the crime of theft as it is defined in § 13A-8-2, Code of 1975. St. Paul Fire Marine Ins. Co. v.Veal, 377 So.2d 962 (Ala. 1979). However, under the former law, the statutory definition of "owner," as presently set out in §13A-8-1(8), did not exist. That section provides:
 "The following definitions are applicable in this article unless the context otherwise requires:
". . .
 "(8) OWNER. A person, other than the defendant, who has possession of or *Page 311 
any other interest in the property involved, even though that interest or possession is unlawful, and without whose consent the defendant has no authority to exert control over the property.
 "A secured party, as defined in section 7-9-105(m), is not an owner in relation to a defendant who is a debtor, as defined in section 7-9-105(d), in respect of property in which the secured party has a security interest, as defined in section 7-1-201(37)." (Emphasis added.)
The undisputed testimony makes it clear that a valid security agreement existed between Rhyne and H B Motors. Under this agreement, H B Motors is a "secured party" as defined in § 7-9-105(1)(m), Code of 1975, and Rhyne is a debtor as defined in § 7-9-105(1)(d), Code of 1975. As a result, H B Motors is not the "owner" of the automobile, of which the defendants charged Rhyne with theft. See § 13A-8-2, Code of 1975. Thus, as a matter of law, probable cause to charge Rhyne with the crime of theft of property did not exist.
It is argued that the drafters of the criminal code did not intend to decriminalize a situation where a person knowingly induces a party by deception to part with his property and also to enter into a security agreement. Instead, the argument continues, the drafters of the criminal code intended to decriminalize only the situation where a debtor defaults on an obligation secured by a security interest and the debtor refuses to return the collateral. We must reject this argument.
It has always been recognized that criminal statutes must be given a strict interpretation in favor of those persons sought to be subjected to their operation. Smith v. United States,360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1950); Ex parte Evers,434 So.2d 813 (Ala. 1983), on remand, 434 So.2d 817
(Ala.Crim.App. 1983); Graddick v. Jebsen S. (U.K.), Ltd., 377 So.2d 940
(Ala. 1979). The language of § 13A-8-1(8) is clear and unequivocal. The construction of § 13A-8-1(8) suggested by this argument does not comport with this policy.
For the reasons stated, the judgment must be reversed and the cause remanded. It is so ordered.
REVERSED AND REMANDED.
MADDOX, JONES, SHORES, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., dissents.
ALMON and STEAGALL, JJ., not sitting.