SHORES, Justice.
The defendant, Larry B. Harris, was convicted of theft of two motor vehicles in St. Clair County, in violation of § 13A-8-3, Code of Alabama 1975. He was sentenced to serve three years in the penitentiary, to make restitution in the amount of $10,855 to A.D.E. of Birmingham, Inc., and to pay $50 to the Alabama Crime Victims Compensation Fund. The Court of Criminal Appeals affirmed his conviction by unpublished memorandum. 609 So.2d 457. He petitioned this Court for the writ of certiorari, contending that the decision of the Court of Criminal Appeals, affirming his conviction, conflicts with Rhyne v. H. & B. Motors, 505 So.2d 307 (Ala.1987). We reverse and remand.
The defendant bought two vehicles at a dealer auction operated by A.D.E. of Birmingham, Inc. (“A.D.E.”), at Moody, Alabama. The procedure followed by A.D.E. is as follows: Wholesalers bring vehicles to the auction and dealers bid on them. When a bid is accepted, the purchaser pays A.D.E. for the vehicle. Harris, a licensed dealer from Jasper, paid A.D.E. by check for two vehicles. A.D.E. issued a statement to Harris, the purchasing dealer, stating that the auction house was holding a security interest in the cars until the check cleared. Immediately after the defendant gave the checks for the automobiles to A.D.E., he sold the automobiles to two others for a profit.
A.D.E. issued a draft to the sellers, in this case Madison Motors of Madison, Tennessee, and U.S. Motor Company of Fayetteville, Georgia, pending the clearance of the titles of the vehicles. When the titles cleared, A.D.E. mailed them to Harris, on or about June 20, 1989, and Harris placed ■ the titles in the names of the persons to whom he had sold the cars. A.D.E. waited until it received the title certificates before it presented the dealer’s check to the bank. In this case, Harris had a falling out with the auction house over another matter and stopped payment on his check on June 23, 1989.
Harris was indicted by the January 1990 term of the grand jury of St. Clair County for the offense of theft of a motor vehicle, § 13A-8-3, Code of Alabama 1975. He was arrested, found guilty by a jury, and sentenced.
Harris contends that, as a matter of law, he cannot be guilty of theft based upon *950 § 13A-8-l(8) and the reasoning of this Court in Rhyne v. H & B Motors, supra. In Rhyne we said:
“Rhyne was charged with the offense of theft of property in the first degree (Section 13A-8-3, Code of 1975). Theft of property is defined in Section 13A-8-2 as follows:
“ ‘A person commits the crime of theft of property if he:
“ ‘(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
“ ‘(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property.’
“Under former Alabama law, it was recognized that one who obtained goods on credit by false pretenses involving the statement of a fact as to the pecuniary condition or financial responsibility of the accused was chargeable with the crime of false pretenses. See, e.g., Dennis v. State, 16 Ala.App. 115, 75 So. 707 (1917). False pretenses, as it was defined in the past, would now constitute the crime of theft as it is defined in Section 13A-8-2, Code of 1975. St. Paul Fire & Marine Ins. Co. v. Veal, 377 So.2d 962 (Ala.1979). However, under the former law, the statutory definition of ‘owner,’ as presently set out in Section 13A-8-l(8), did not exist. That section provides:
“The following definitions are applicable in this article unless the context otherwise requires:
[[Image here]]
“ ‘(8) OWNER. A person, other than the defendant, who has 'possession of or any other interest in the property involved, even though the interest or possession is unlawful, and without whose consent the defendant has no authority' to exert control over the property.
“ A secured party, as defined in section 7-9-105(to), is not an owner in relation to a defendant who is a debtor, as defined in section 7-9-105(d), in respect of property in which the secured party has a security interest, as defined in section 7-1-201(37).’ (Emphasis added [in Rhyne].)
“The undisputed testimony makes it clear that a valid security agreement existed between Rhyne and H & B Motors. Under this agreement, H & B Motors is a ‘secured party’ as defined in § 7-9-105(l)(m), Code of 1975, and Rhyne is a debtor as defined in § 7-9-105(l)(d), Code of 1975. As a result, H & B Motors is not the ‘owner’ of the automobile, of which the defendants charged Rhyne with theft. See § 13A-8-2, Code of 1975. Thus, as a matter of law, probable cause to charge Rhyne with the crime of theft of property did not exist.”
505 So.2d at 310-11.
Harris contends that he did not commit the crime of theft of property. He argues that A.D.E. retained a security interest in the automobiles under the Uniform Commercial Code, and, therefore, under the reasoning in Rhyne, supra, was not an “owner” within the meaning of the theft statute, § 13A-8-2, but was a “secured party” within the meaning of § 7-9-105(l)(m), and that he was a “debtor” as defined in § 7 — 9—105(l)(d).
A.D.E.’s terms of sale were introduced as State’s Exhibits 3 and 4; they contain the following language:
“For valuable consideration, and to secure final payment of any indebtedness owing to A.D.E. arising out of the sale of the consigned vehicle. Purchaser hereby grants to A.D.E. a purchase money security interest to such collateral consisting of the consigned vehicle, together with all additions, accessions, accessories, replacements and in the proceeds thereof. Purchaser hereby authorizes A.D.E. to prepare and file a financing statement without Purchaser’s signature being placed thereon.
“Delivery of the consigned vehicle to the possession of Purchaser prior to final payment having been received by A.D.E., and until a valid certificate of title for the consigned vehicle has been delivered to Purchaser is solely for the convenience of Purchaser, and no title is conveyed or is *951 intended to be conveyed to Purchaser until both these conditions have first been met.
“Seller and Purchaser agree to abide by registration policies and A.D.E. policies, copies of which have been furnished to Seller and Purchaser.
“By accepting A.D.E.’s check or draft Seller agrees to be bound by the TERMS OF SALE and acknowledges completion and execution of the required odometer mileage statement pertaining to the vehicle described herein.
“By signing below Purchaser agrees to be bound by the TERMS OF SALE pertaining to the vehicle described herein.
“PURCHASER AGREES: A.D.E. maintains a security interest in this vehicle until paid for with collected funds.”
Harris argues that, under this agreement, a valid security agreement existed between himself and A.D.E., and, thus, that he cannot be guilty of theft of property, as a matter of law. We agree that, under Alabama statutes and the reasoning in Rhyne, Harris cannot be guilty of theft, as a matter of law, because A.D.E. retained a security interest in the vehicles. It is admittedly a loophole, but it is one that only the Alabama Legislature can close. It is obvious that the legislature included § 13A-8-l(8) in order to decriminalize the situation where a debtor defaults on an obligation secured by a security interest and refuses to return the collateral.
For the reasons stated above, the judgment of the Court of Criminal Appeals is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ALMON, J., concurs in the result.