SHAW, Judge.
Charles Edward Jackson pleaded guilty to theft of property in the second degree, a violation of § 13A-8-4, Ala.Code 1975. He was sentenced to three years’ imprisonment; the sentence was suspended, and he was placed on three years’ probation. Before entering his plea, Jackson expressly reserved the right to appeal the trial court’s denial of his motion to dismiss.
Our review of the record reveals the following. On July 25, 2003, Jackson executed a rental agreement with Abbeville Rental, Inc., for several items of furniture. (C. 30.) He made three payments under this agreement — one on July 25, 2003, one on August 25, 2003, and one on September 25, 2003. (C. 31-32.) In November 2003, Norman Leidinger of Abbeville Rental learned that Jackson had sold the furniture to Britt Ludlum at Ludlum Trading Post after representing to Ludlum that the furniture covered by the agreement had been paid for. (C. 3^1.) Leidinger filed a complaint against Jackson alleging second-degree theft of property. Thereafter, Jackson was indicted for that offense. The indictment stated that Jackson
“did in Henry County, Alabama, knowingly obtain or exert unauthorized control over a TWO PIECE LIVING ROOM SUITE and ONE QUEEN MATTRESS AND FRAME the property of ABBEVILLE RENTAL CENTER, of the value of $1,309.00, with the intent to deprive the owner of said property, in violation of Section 13A-8-4 of the Code of Alabama.”
(C. 12.)
Jackson filed a motion to dismiss the case, alleging that in light of the holding in Rhyne v. H & B Motors, 505 So.2d 307 (Ala.1987), he could not, as a matter of law, be guilty of theft of property because, he said, under the rental agreement executed on July 25, 2003, Abbeville Rental was no longer the owner of the property, but was a secured party that had merely retained a *1288 security interest in the property. He also alleged that the criminal division of the Henry Circuit Court was not the proper forum for this ease because the parties had agreed to arbitration.
On May 10, 2005, the trial court conducted a hearing on Jackson’s motion to dismiss. After hearing arguments from both parties, the trial court stated:
“THE COURT: Well, my ruling in the case — I have read these cases on the subject, and my ruling is, number one, is that this transaction, according to the lease document, is not a secured transaction, either constructive as is set out in the Lawson State [Cmty.] College [v. First Cont’l Leasing Corp., 529 So.2d 926 (Ala.1988) ] case, where an actual leasing company took title, and then from the vendor, and the vendor in this case never did anything but lease — or an actual sale to the — with a security interest back, as in the [Rhyne v. H & B] Motors case, which means the motion in that regard as to the first area, about its being a secured transaction, is denied. And then, it is denied as to the second area, about the victim — alleged victim having a civil remedy, which is effected by an arbitration case, that that would not apply, because the State of Alabama is not bound by the civil remedies of a victim, nor an arbitration case, because they are not a party to. So, the motion is denied on both counts.”
(R. 11-12.)
On appeal, Jackson contends that his motion to dismiss should have been granted because, he says, under the terms of the July 25, 2003, agreement, Abbeville Rental is not the owner of the property, and thus, its employee, Leidinger, could not file a complaint against Jackson alleging second-degree theft of property as to the property that is the subject of the agreement. He also contends that the agreement he executed with Abbeville Rental on July 25, 2003, was a security agreement rather than a rental agreement and that Abbeville Rental does not fall within the definition of an “owner” set out in § 13A-8-l(8), Ala.Code 1975. Jackson does not raise the arbitration issue on appeal.
The State argues that Jackson was properly charged with second-degree theft of property because, it says, Abbeville Rental was the owner of the property, not merely a secured party, and that when Jackson sold the property to a third party without authorization from Abbeville Rental, he was exerting unauthorized control over property belonging to Abbeville Rental.
The rental agreement dated July 25, 2003, indicates that the rental term was “MONTHLY.” (C. 30.) The agreement also states that “[rjental payments are due at the beginning of each term that you choose to rent the property” and that “THIS IS A RENTAL TRANSACTION. You may use the property for the terms of this lease. At your option, you may renew this lease. To do this, you must make rental payment in advance for each term you wish to rent the property.” (C. 30.) Additionally, the rental agreement states that “[y]ou are liable for loss, damage and/or destruction of the leased property, normal wear and tear, excepted.” (C. 30.) The rental agreement further states:
“TERMINATION: You may voluntarily terminate this lease at the end of any term with no penalty. To do so, you must return the property and pay all rental payments and other charges due through the date of return.
*1289 “ASSIGNMENT: We may sell, transfer, or assign this lease without notice to you.
“TITLE, MAINTENANCE AND TAXES: We retain title to the property at all times and will pay any taxes which might be levied on the property. You do not own the property unless you buy or acquire ownership as provided by the terms of this lease. We will maintain the property in good working order as long as you rent it.
“OUR RIGHTS TO TAKE POSSESSION: If you do not renew this lease, we have the right to take possession of the property. If you do not allow us to do so, you agree to pay our costs incurred in taking possession of the property including reasonable attorney’s fees.
“FORBIDDEN ACTS: If you sell, mortgage, pawn, pledge, encumber, hock, dispose of the property or move it from your current residence, without our consent, you will have breached this lease and we will have the immediate right to possession of the property.”
(C. 30) Additionally, the rental agreement states:
“5. COST OF LEASE: If you choose to rent to own you must renew this lease for the following number of months or weeks:
“12 Months @ $85.32/mo. for a total cost of $1023.84
“_Weeks @ _/wk. for a total cost of_
“6. OUR ESTIMATED FAIR MARKET VALUE FOR THIS PROPERTY IS $899.00.
“7. PURCHASE OPTION: If you wish to purchase the rental property you may do so by the payment of $100.00 of the remaining total balance calculated at that time. This option is not available within 90 days of conclusion of this contract.”
(C. 30.)
Section 13A-8-l(8), Ala.Code 1975, defines an “owner” as follows:
“A person, other than the defendant, who has possession of or any other interest in the property involved, even though that interest or possession is unlawful, and without whose consent the defendant has no authority to exert control over the property.
“A secured party, as defined in Section 7-9A-102(a)(72), is not an owner in relation to a defendant who is a debtor, as defined in Section 7-9A-102(a)(28), in respect of property in which the secured party has a security interest, as defined in Section 7-1-201(37).”
Section 7-1-201(37), Ala.Code 1975,[1] defined the term “security interest” as follows:
“a. ‘Security interest’ means an interest in personal property or fixtures which secures payment or performance of an obligation. The term also includes any interest of a consignor and a buyer of accounts, chattel paper, a payment *1290 intangible, or a promissory note in a transaction that is subject to Article 9A. The special property interest of a buyer of goods on identification of those goods to a contract for sale under Section 7-2-401 is not a ‘security interest,’ but a buyer may also acquire a ‘security interest’ by complying with Article 9A. Except as otherwise provided in Section 7-2-505, the right of a seller or lessor of goods under Article 2 or 2A to retain or acquire possession of the goods is not a ‘security interest,’ but a seller or lessor may also acquire a ‘security interest’ by complying with Article 9A. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 7-2^101) is limited in effect to a reservation of a ‘security interest.’
“b. Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and
“1. the original term of the lease is equal to or greater than the remaining economic life of the goods, or
“2. the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods, or
“3. the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or
“4. the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.
“c. A transaction does not create a security interest merely because it provides that:
“1. the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,
“2. the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,
“3. the lessee has an option to renew the lease or to become the owner of the goods,
“4. the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or
“5. the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.
“d. For purposes of this subdivision (37):
“1. Additional consideration is not nominal if (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at *1291 the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee’s reasonably predictable cost of performing under the lease agreement if the option is not exercised;
“2. ‘Reasonably predictable’ and ‘remaining economic life of the goods’ are to be determined with reference to the facts and circumstances at the time the transaction is entered into; and
“3. ‘Present value’ means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by the court as a matter of law by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.”
In Rhyne v.H&B Motors, supra, Harvey Rhyne purchased an automobile from H & B Motors. Rhyne made a down payment on the automobile, and he received a bill of sale and signed a promissory note and a security agreement. He did not make any further payments on the automobile. A warrant was issued for Rhyne’s arrest on a charge of first-degree theft of property by deception; the charge was later dropped. Thereafter, Rhyne sued H & B Motors alleging malicious prosecution, and the case proceeded to trial. The trial court directed a verdict in favor of H & B Motors, finding that probable cause for Rhyne’s arrest had been established as a matter of law. On appeal, the Alabama Supreme Court quoted the definition of an “owner” as set out in § 13A-8-1(8) and then stated:
“The undisputed testimony makes it clear that a valid security agreement existed between Rhyne and H & B Motors. Under this agreement, H & B Motors is a ‘secured party’ as defined in § 7-9-105(1)(m), Code of 1975, and Rhyne is a debtor as defined in § 7-9—105(1)(d), Code of 1975. As a result, H & B Motors is not the ‘owner’ of the automobile, of which the defendants charged Rhyne with theft. See § 13A-8-2, Code of 1975. Thus, as a matter of law, probable cause to charge Rhyne with the crime of theft of property did not exist.”
Rhyne, 505 So.2d at 311.
In Lawson State Community College v. First Continental Leasing Corp., 529 So.2d 926 (Ala.1988), overruled on other grounds, Berner v. Caldwell, 543 So.2d 686 (Ala.1989), Lawson State Community College had negotiated with Energy Recovery for the purchase of a heating, ventilating, and air-conditioning system to be installed at Lawson State. The parties financed this transaction by way of an equipment lease. First Continental Leasing Corporation paid Energy Recovery in full for both the equipment and for installing and maintaining the equipment. First Continental took title of the equipment and, in turn, leased the equipment to Lawson State. Under the terms of the “Equipment Lease-Purchase Agreement,” Lawson State was to pay $2,618.88 per month for 60 months; at the end of the 60-month period, Lawson State had the right to pur *1292 chase the equipment “for a ‘concluding payment’ of $1.00.” 529 So.2d at 927.
The Alabama Supreme Court determined that the lease between First Continental and Lawson State was
“not a ‘true’ lease, but [was] instead a lease in the nature of a security interest, as contemplated by Ala.Code (1975), § 7-1-201(37) and § 7-9-102. These sections establish that a ‘lease’ allowing the lessee to purchase at a ‘nominal consideration’ the subject-matter of the lease is to be considered a security agreement rather than a ‘true’ lease. See Commerce Union Bank v. John Deere Indus. Equip. Co., 387 So.2d 787 (Ala.1980); see generally B. Clark, The Law of Secured Transactions under the Uniform Commercial Code, at 1-25 through 1-29 (1980). In the instant case, the right of [Lawson State] to purchase the equipment for a mere $1.00 at the termination of the lease constitutes an option to purchase at a ‘nominal consideration,’ and hence, the arrangement between these two parties is no mere bailment lease, but is instead a disguised conditional sale secured by a security agreement. Accordingly, Article 9 applies to this ‘lease’ transaction.”
529 So.2d at 929.
In Commerce Union Bank v. John Deere Industrial Equipment Co., 387 So.2d 787 (Ala.1980), the Alabama Supreme Court sought to determine whether the agreement between John Deere Industrial Equipment Company and American Forest Resources, Inc., was a true lease or a security interest.
“Upon a cursory examination of the rental agreement in question, many of its conditions and terms seem to indicate a security interest. The standard printed lease form provides that lessee shall be liable for the full rent of the guaranteed minimum rental period, that lessee may purchase at his option at any time during the term and apply ninety-one percent (91%) of all rentals paid to the purchase price which is the present value as indicated on the lease, that lessee shall indemnify lessor for loss or damage (except to the extent covered by insurance purchased by the lessor), that the amount of total loss shall be calculated according to the present value, less any rental payments made, and that damage other than total loss shall not terminate the rental payments for the remainder of the term. The lease, however, does not designate any guaranteed minimum rental term. Although the instrument provides a space for the designation of a guaranteed term and the lease provisions and conditions refer to a guaranteed term, there is no evidence of any guaranteed minimum rental period under this lease.
“Most of the cases declaring rental agreements to be security interests have involved leases which obligated lessees for a guaranteed minimum term: Matter of Tillery, 571 F.2d 1361 (5th Cir.1978); James Talcott, Inc. v. Associates Capital Co., Inc., 491 F.2d 879 (6th Cir.1974). American Forest Resources was not obligated to pay any particular sum of money for any specified term other than monthly rental payments of $2,575.00. According to competent testimony at trial, the rental value of this equipment would be between $2,200.00 and $2,500.00 per month. Under this arrangement, therefore, American Forest Resources could terminate the lease and return the equipment at any time without further liability.
“Although ninety-one percent (91%) of the rentals paid could be applied to the purchase price in the event American *1293 Forest Resources exercised its option to purchase, there is no conclusive evidence that this provision would allow the lessee to ‘become or [have] the option to become the owner of the property for no additional consideration or for a nominal consideration.’ Code 1975, § 7-1-201(37). Likewise, there is no evidence to support a contention that the only sensible course for American Forest Resources under the terms of the lease would be to exercise the purchase option. In fact, American Forest Resources exercised its option pursuant to the ninety-one percent (91%) accrual allowance only one month after the lease was executed, which left almost the entire purchase price to be paid. There is also evidence that the actual purchase price was more than the option price in the lease. The present value (option price) of the equipment was $35,808.00 in the lease as compared to the actual purchase price of $41,700.00 in the purchase agreement. The seeming renegotiation of the purchase price further indicates the intent of the parties to enter into two separate transactions — first a lease, then a purchase agreement.
“Although American Forest Resources obtained actual possession of the equipment on August 10, pursuant to the rental agreement, it did not become a ‘debtor,’ nor did it ‘[receive] possession of the collateral’ for purposes of § 7-9-312(4) until September 11, the date of the purchase agreement. Brodie Hotel Supply, Inc. v. United States, 431 F.2d 1316 (9th Cir.1970). Brodie states that ‘the term “debtor” as it is used in this particular priority statute ... [§ 7-9-312(4) ] means “the person who owes payment or other performance of the obligation secured.” ’ [§ 7 — 9—105(d) ], Id. at 1319. American Forest Resources was only required to pay rent on a monthly basis for the use of the equipment; therefore, it ‘did not owe performance of an “obligation secured” by the collateral in question’ until the purchase agreement was executed on September 11,1978. Id.
“After a careful review of the lease, and for the above stated reasons, we find that the intent of the parties was to create a true lease. John Deere’s purchase money security interest was created by the execution of the purchase agreement on September 11, and the financing statement filed September 21 perfected and secured John Deere’s preferred status over Commerce Union’s prior perfected security interest.”
387 So.2d at 791-92.
Under the rental agreement, Jackson was not obligated to pay any particular sum of money for any specified period of time except the amount of the monthly rental; he had an option to renew the lease by making the monthly rental payment in advance; and he had a right to terminate the lease by returning the property to Abbeville Rental without any further liability. The rental agreement provided that Abbeville Rental retained title to the property and was responsible for paying any taxes levied on the property. Under the terms of this agreement, this agreement was a lease; it did not create a security interest. Thus, the trial court properly denied Jackson’s motion to dismiss because Abbeville Rental was the owner of the property and could prosecute Jackson for second-degree theft of property-
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.

. We recognize that effective January 1, 2005, the definition of the term "security interest” can be found at § 7-1-201(35), Ala.Code 1975, rather than at § 7-1-201(37), Ala.Code 1975, and that, effective January 1, 2005, that portion of § 7-1-201(37) that explained the difference between a security interest and a lease can be found at § 7-1-203, Ala.Code 1975. In fact, effective January 1, 2005, § 7-1-201(35) states, in pertinent part, that "[w]hether a transaction in the form of a lease creates a 'security interest’ is determined pursuant to Section 7-1-203.”